**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CENTRAL PINES LAND COMPANY, ET AL.<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 98-314 L<br><br>Chief Judge Edward J. Damich |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

## MOTION

Defendant, UNITED STATES OF AMERICA, respectfully moves, pursuant to Rule of the United States Court of Federal Claims (RCFC) 56, for summary judgment in favor of Defendant in the above-captioned case.

Because Plaintiffs are unable to identify any unsuccessful attempts to access the Group C lands after 1978, their First Amended Complaint ("FAC") is barred by the applicable statute of limitations, 28 U.S.C. § 2501. In the alternative, and for the same reason, Plaintiffs fail to state a claim upon which relief can be granted. This motion is supported by the following Memorandum and attached exhibits.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . 4

A. Procedural History . . . . . . . . . . 4

B. Factual Background . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . 9

I. Plaintiffs' "De facto Moratorium" Arguments Fail as a Matter of Law . . . . . . . . 9

A. Plaintiffs' "de fact moratorium" allegations are barred by the statute of limitations . . . . . . . . . . 9

B. The continuing claim doctrine does not rescue Plaintiffs' stale claims . . . . . . . . 13

C. Plaintiffs' "de facto moratorium" allegations fail to state a claim . . . . . . . . . . 20

II. Plaintiffs' Allegations Regarding "Military Use" and "Dangerous Conditions" Fail to State a Claim . . . . . . . . . . 23

A. The "military use" and "dangerous conditions" allegations are barred by the statute of limitations . . . . . . . . . . 23

B. The continuing claim doctrine does not rescue Plaintiffs' stale claims . . . . . . . . 25

C. Plaintiffs' allegations regarding "dangerous conditions" fail as a matter of law . 25

III. Plaintiffs' Allegations Regarding the United States' Claim of Ownership Fail to State a Claim . . . . . . . . . . 26

A. Plaintiffs' allegations regarding the United States' leasing of portions of Group C were considered and rejected by the district court in the related action . . . . . . . 27

B. Plaintiffs' allegations regarding leasing by the United States fail to state a claim . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alliance of Descendants of Texas Land Grants v. United States,
27 Fed. Cl. 837 (1993) . . . . . . . . . . 11, 13

Allied-General Nuclear Services v. United States,
839 F.2d 1572 (Fed. Cir.) . . . . . . . . . . 8

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 7, 8

Appolo Fuels, Inc. v. United States,
54 Fed. Cl. 717 (2002) . . . . . . . . . . 8

Ariadne Fin. Services Prop., Ltd. v. United States,
133 F.3d 874 (Fed. Cir. 1998) . . . . . . . . . . 15, 25

Bath Iron Works Corp. v. United States,
27 Fed. Cl. 114 (1992) . . . . . . . . . . 11

Block v. North Dakota,
461 U.S. 273 (1983) . . . . . . . . . . 10

Boling v. United States,
220 F. 3d 1365 (Fed. Cir. 2000) . . . . . . . . . . 15, 16

Brown Park Estate-Fairfield Dev. Co. v. United States,
127 F. 3d 1449 (Fed. Cir. 1997) . . . . . . . . . . 19

Burich v. United States,
366 F.2d 984 (Ct. Cl. 1966) . . . . . . . . . . 14

Catawba Indian Tribe of S.C. v. United States,
982 F.2d 1564 (Fed. Cir.) . . . . . . . . . . 11

Catellus Dev. Corp. v. United States,
31 Fed. Cl. 399 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Central Pines Land Co. v. United States,
274 F. 3d 881 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 12, 19, n.8, 22, 26

Cloutier v. United States,
19 Cl. Ct. 326 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Coon v. United States,
30 Fed. Cl. 531 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Cristina Inv. Corp. v. United States,
40 Fed.Cl. 571 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Davidson v. United States,
66 Fed. Cl. 206 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Fallini v. United States,
56 F. 3d 1378 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Farrell v. United States,
9 Cl. Ct. 757 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

First Nat'l Bank of Ariz. v. Cities Serv. Co.,
391 U.S. 253 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Friedman v. United States,
310 F.2d 381 (Ct. Cl. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14,15

Gailey v. McFarlain,
193 So. 570 (La. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Gayoso Co. v. Arkansas Natural Gas Corp.,
145 So. 677 (La. 1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Hatter v. United States,
203 F. 3d 795 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . n. 4, 14, 15, 19

Japanese War Notes Claimants Ass'n of Phillipines, Inc. v. United States,
373 F.2d 356 (Ct. Cl. 1967), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Jones v. United States,
801 F.2d 1334 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lunaas v. United States,
936 F.2d 1277 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Matushita Elect. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mitchell v. United States,
10 Cl. Ct. 63 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,
739 F.2d 624 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Soriano v. United States,
352 U.S. 270 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

State of Alaska v. United States,
32 Fed. Cl. 689 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 23, 24

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tabb Lakes v. United States,
26 Cl. Ct. 1334 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States Steel Corp. v. Vasco Metals Corp.,
394 F.2d 1009 (C.C.P.A. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Diebold, Inc.,
369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Yuba Goldfields, Inc. v. United States,
723 F.2d 884 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

25 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10, 28

# MEMORANDUM

---

## PRELIMINARY STATEMENT

Defendant, United States of America, respectfully submits this Memorandum in Support of its Motion for Summary Judgment. Plaintiffs' First Amended Complaint ("FAC") alleged two counts. The first count was dismissed by the Court after a motion for judgment on the pleadings. The remaining claim, count II, alleges an "unconstitutional taking" of Plaintiffs' mineral interests in the "Group C lands." Because Plaintiffs' claim is barred by the statute of limitations, and because Plaintiffs otherwise fail to state a claim, Plaintiffs' FAC should be dismissed with prejudice.

Plaintiffs own a mineral servitude to the Group C lands, a parcel of property in Vernon Parish, Louisiana. The United States owns the surface. Plaintiffs allege that the United States committed an "unconstitutional taking" by denying Plaintiffs access to their mineral servitude. From the time Plaintiffs acquired their property interest, until 1978, the property was under a moratorium by the United States Army, prohibiting access to the surface and compensating Plaintiffs' predecessor in interest, the mineral servitude owner. Plaintiffs allege that Defendant's actions since the end of the moratorium continue to impede Plaintiffs' access to the servitude through a "de facto moratorium" and amount to an "unconstitutional taking."

Defendant previously filed a motion for judgment on the pleadings, arguing that Plaintiffs' remaining claim is barred by the statute of limitations because it accrued, if at all, when the moratorium ended in 1978. Plaintiffs responded that the statute of limitations did not apply because of the "continuing claim doctrine" – a limited doctrine that sometimes prevents

application of the statute of limitations. This Court found that "the application of the continuing claim doctrine will determine whether Count II is time-barred." August 12, 2004 Order at 24. However, the Court expressed skepticism at Plaintiffs' ability to invoke the continuing claim doctrine – noting that Plaintiffs provide few details to bolster their assertions that they were repeatedly denied access to the surface of Group C after the moratorium ended. Id. at 29. But the Court was hesitant to make such a finding absent a full development of the facts and denied Defendant's motion as to Count II – the remaining count. Id. at 29. The Court anticipated a motion for summary judgment following discovery. Id. at 32. And in planning to revisit the question of the continuing claim doctrine, the Court instructed the parties to focus on attempts by Plaintiffs to access the surface of Group C – and what, if anything, Defendant did in response. Because, after completing discovery, Plaintiffs are still unable to identify any attempts to access the surface of Group C, the continuing claim doctrine is inapplicable. Plaintiffs' claim accrued, if at all, when the moratorium ended in 1978. Accordingly, the sole remaining claim in Plaintiffs' FAC is barred by the statute of limitations, 25 U.S.C. § 2501, and should be dismissed.

In the alternative, Plaintiffs' FAC fails to state a claim upon which relief can be granted. Plaintiffs allege that the United States denied Plaintiffs access to their mineral rights by (1) continuing a "de facto moratorium" after the formal moratorium expired; (2) proceeding with military use of the property and creating "dangerous conditions" inconsistent with mineral activities; and (3) incorrectly asserting ownership and leasing portions of the Group C lands that fall within the Kisatchie National Forest. Each of these allegations is without merit.

By Plaintiffs' own acknowledgment, the "de facto moratorium" allegations accrued when

the formal moratorium ended in 1978. Accordingly, they are outside the statute of limitations period and must be dismissed. Because Plaintiffs have never attempted to access the surface of the Group C lands, these allegations also fail to state a claim.

As the FAC acknowledges, the military use of the property dates back to 1942. And as Plaintiffs have acknowledged in depositions, the alleged "dangerous conditions" date back to at least the 1970s. Therefore, these allegations also accrued outside the statute of limitations period and are time-barred. Moreover, Plaintiffs only allege that a "portion" of Group C is too contaminated for mineral activities. As the Fifth Circuit held in the related quiet title action, when only a portion of the surface is inaccessible, this is not a denial of access to a mineral servitude. Accordingly, even if the Court were to look past the statute of limitations problem, these allegations fail to state a claim.

Finally, Plaintiffs' allegations regarding the claim of ownership and leasing activity by the United States are without merit. As the district court found in the related quiet title action, a surface owner's leasing of mineral rights to a party other than the mineral servitude owner is not, in and of itself, an impediment to access. Central Pines Land Co. v. United States, No. 2:96-2000, slip op. (W.D. La. July 28, 2000), aff'd, 274 F. 3d 881 (5th Cir. 2001), cert. denied, 537 U.S. 822 (2002) (the "related action"), Exhibit B at 33. Moreover, the fact that Plaintiffs did lease a majority of the portion of the Group C lands for which the United States claimed ownership and offered leases demonstrates that these allegations are without merit.

Accordingly, the allegations in Count II fail to state a claim. Because this is the only remaining count, the Court should dismiss the FAC with prejudice.

## BACKGROUND

### A. Procedural History

This action originally related to three parcels of land in Vernon Parish, Louisiana, known as Groups A, B and C. FAC ¶ 1[1]/, see Exhibit A (map of area showing parcels as described in FAC, attachment A). The surface of these lands is owned by the United States. August 12, 2004 Order at 2. The ownership of the subsurface mineral interests ("mineral servitude" or "mineral rights") was the subject of dispute in a related quiet title action. Ex. B. Plaintiffs originally filed the present action against the United States on March 3, 1998, alleging an "unconstitutional taking" of their property interests – mineral rights – in Groups A, B and C. ¶ 1. But Plaintiffs' takings claims regarding the mineral rights could not be resolved until it was determined if they still owned the mineral rights. So the present action was stayed for several years, pending the related action to determine ownership. August 12, 2004 Order at 3.

In the related action, the parties disputed whether the Plaintiffs' Group A, B and C mineral rights reverted to the United States under Louisiana's prescription law. Ex. B. Under Louisiana law, mineral servitudes expire and revert to the surface owner after ten years of nonuse. Id. at 12. Granting summary judgment, the United States District Court for the Western District of Louisiana (the "district court") found that Plaintiffs' Group A and B mineral rights prescribed to the United States after 10 years of nonuse. Id. at 34. The court rejected Plaintiffs' arguments that the prescriptive period was suspended because of actions by the United States that created obstacles, or impeded Plaintiffs' access to their mineral rights. Id. at 15. The court found, inter alia, that Plaintiffs made no attempt to access their mineral rights and that these

---

[1]/ All paragraph references ("¶") are to Plaintiffs' FAC.

rights prescribed. Id. at 34. The district court also granted summary judgment to Plaintiffs on the Group C mineral rights, finding Plaintiffs' Group C mineral rights imprescriptible because they were acquired after 1940. Id. at 3, n. 4.[2]/ The Fifth Circuit affirmed. 274 F. 3d 881.

After the ownership of the servitude was resolved, the United States filed a motion for judgment on the pleadings in the present case. On August 12, 2004, this Court granted the United States' motion as to the Group A and B mineral rights – Count I. The Court rejected Plaintiffs' equitable tolling arguments and found that Plaintiffs no longer owned the Group A and B mineral rights. Order at 6. The Court denied Defendant's motion as to the Group C mineral rights – Count II. Id. The Court found that there was an insufficient factual record to rule on Defendant's statute of limitations argument. The parties were instructed to complete discovery and, if filing a subsequent motion for summary judgment, focus on attempts by Plaintiffs to access the surface of Group C and what, if anything, Defendant did in response. Id. at 31. The parties completed discovery on August 4, 2006.

**B. Factual Background**

The history of this case is long and protracted. But the ruling in the related action and this Court's Order dismissing Count I have greatly simplified it. In 1937, W. T. Burton, Plaintiffs' predecessor in interest, acquired the complete title to the Group C lands. The United States subsequently acquired the surface rights to the Group C lands from Burton through several separate transactions and expropriation proceedings that took place between 1942 and 1981.

---

[2]/ Louisiana Act 315 of 1940 rendered imprescriptible any subsurface mineral rights in land where the United States is the surface owner. Id. Because Plaintiffs acquired the Group C mineral rights after 1940, the district court found that Act 315 applied and that Plaintiffs still own these mineral rights. Id.

August 12, 2004 Order at 5. Burton retained the mineral rights in the Group C lands. Burton's rights were later transferred to Plaintiffs in 1988, in mesne conveyances that occurred as a result of a corporate reorganization. Id.

Between 1950 and 1978, through a series of condemnation proceedings, the United States instituted a mineral moratorium that prevented the owners of the mineral servitude from entering portions of the Group A and B lands and all of Group C. Ex. B at 3-4. Throughout the pendency of the moratorium, the United States paid compensation to Burton on a per acre basis for the parts of the servitude that were inaccessible for mineral operations. Id. at 4. The moratorium formally ended on March 31, 1978. Id. at 4-5 (citing March 31, 1977 Letter from John Camp, attorney for W. T. Burton Industries, to Michael Drost, employee for Burton Industries, acknowledging that Army's moratorium was to end on March 31, 1978, Exhibit C; and June 6, 1977 Letter from Major General William B. Steele to Commander, US Army FORSCOM, explaining that moratorium was to end on March 31, 1978, Exhibit D).

In 1992, after determining that Plaintiffs' mineral rights had prescribed, the United States Bureau of Land Management ("BLM") began granting a series of oil and gas leases to the minerals underlying the surface of the Group A and B lands. Id. at 4. Also, in 1996 and 1997 the United States granted a series of mineral leases for the portions of Group C on the Kisatchie National Forest. Plaintiffs' Responses to Defendant's First Set of Interrogatories, Exhibit F at 3-6. See also, Ex. E (map showing Group C lands as described in the FAC and delineating the Fort Polk and Kisatchie National Forest portions).[3]/ These leases were granted only as to the

[3]/ The Group C lands consist of 21,118 acres and are described in the FAC, attachment A. As illustrated on the map in Exhibit E, approximately 16,000 of these acres are located within the eastern and central portion of Fort Polk. The approximately 5,100 remaining acres ("Group C

Kisatchie portion of Group C. Ex. F at 3.

In 1996, Plaintiffs Central Pines Land Company and Tower Minerals Company, Inc. leased approximately 4,822 acres of Group C to Chesapeake Operating, Inc. Ex. F at 10. Also in 1996, Plaintiffs Central Pines Land Company and Tower Minerals Company, Inc. leased approximately 28,668 acres of property contiguous with and partially including Group C to Sonat Exploration Company. Id.

## STANDARD OF REVIEW

Court of Federal Claims Rule 56(c) provides that summary judgment is proper if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (summary judgment is proper where there is no genuine dispute as to any material fact); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987).

Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Here, the disposition of this matter by summary judgment would eliminate the need for trial.

The United States is entitled to summary judgment if no genuine issues of material fact

---

Kisatchie") form a peninsula adjacent to and south of the southeastern tip of Fort Polk. These acres are part of the Kisatchie National Forest and are used by the Army as part of the "Fort Polk Intensive Use Area."

exist that would defeat judgment in its favor. First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Although the facts "must be viewed in the light most favorable to the party opposing the motion," United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), "a mere 'metaphysical doubt' will not prevent the granting of a summary judgment motion." Cloutier v. United States, 19 Cl. Ct. 326, 328 (1990) (quoting Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)), aff'd mem., 937 F.2d 622 (Fed. Cir. 1991).

The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action....'" Tabb Lakes v. United States, 26 Cl. Ct. 1334, 1344 (1992) (quoting Celotex Corp., 477 U.S. at 327), aff'd, 10 F.3d 796 (Fed. Cir. 1993). The summary judgment procedure "must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and in which that party will bear the burden of proof at trial. A complete failure of proof concerning an essential element of the non-movant's case entitles the movant to judgment as a matter of law." Cloutier, 19 Cl. Ct. at 328 (quoting Celotex Corp., 477 U.S. at 323-24).

The "fact-intensive" nature of takings cases is sometimes asserted as a basis for denying summary judgment. Yuba Goldfields, Inc. v. United States, 723 F.2d 884, 887 (Fed. Cir. 1983). In the appropriate case, however, the vehicle of summary judgment can isolate and dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 323-24. See also Allied-General Nuclear Services v. United States, 839 F.2d 1572 (Fed. Cir.) (affirming summary judgment of takings claim), cert. denied, 488 U.S. 819 (1988); Appolo Fuels, Inc. v. United States, 54 Fed. Cl. 717, 719 (2002), aff'd, 381 F. 3d 1338 (Fed Cir. 2004), cert. denied, 543 U.S. 1180 (2005).

When the material facts are adequately developed in the motion papers, no additional evidence could reasonably be expected to change the outcome. Pure Gold, Inc. v. Syntex (U.S.A.), Inc., 739 F.2d 624, 626 (Fed. Cir. 1984); United States Steel Corp. v. Vasco Metals Corp., 394 F.2d 1009, 1011 (C.C.P.A. 1968).

Summary judgment is proper in this case because there is no genuine issue as to any material fact. Plaintiffs have failed to uncover any factual dispute relevant to the legal arguments discussed herein. This Court should therefore find that, based on the existing record, Defendant is entitled to judgment in its favor as a matter of law.

## ARGUMENT

### I. Plaintiffs' "De facto Moratorium" Arguments Fail as a Matter of Law.

Plaintiffs allege that the United States has taken their property interests through "de facto moratoriums" which denied them access to their mineral rights. ¶ 39. Specifically, Plaintiffs assert that after the formal moratorium ended, the United States had a "secret policy" to continue to deny Plaintiffs access to the surface of the Group C lands. ¶ 16. This "secret policy" allegedly amounts to a "de facto moratorium." ¶ 39. Because, as the FAC acknowledges, this claim accrued when the formal moratorium ended, it is barred by the statute of limitations. And because Plaintiffs have no evidence that they ever attempted to access the surface of Group C, these allegations fail to state a claim.

#### A. Plaintiffs' "de facto moratorium" allegations are barred by the statute of limitations.

The United States may not be sued except with the consent of Congress. United States v. Mitchell, 463 U.S. 206, 212 (1983). A waiver of sovereign immunity is subject to any conditions

imposed by Congress. Soriano v. United States, 352 U.S. 270, 276 (1957). And when a waiver of sovereign immunity contains a statute of limitations, the "limitations provision constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota, 461 U.S. 273, 287 (1983). The statute therefore "define[s] th[e] court's jurisdiction to entertain the suit." United States v. Testan, 424 U.S. 392, 399 (1976).

A claim which is time-barred under the statute of limitations must be dismissed since this Court would lack subject matter jurisdiction. See Jones v. United States, 801 F.2d 1334, 1335 (Fed. Cir. 1986), cert. denied, 481 U.S. 1013 (1987). This remains as true for Fifth Amendment takings claims as for other types of claims brought before this Court. Lunaas v. United States, 936 F.2d 1277, 1279 (Fed. Cir. 1991). Moreover, "since the defense is jurisdictional ... a plaintiff bears the burden of proving jurisdiction when the question of jurisdiction has been raised in the context of a dispositive motion." Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404 (1994).

The statute of limitations for suits in the United States Court of Federal Claims is 28 U.S.C. § 2501 (2004). This section provides:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

Under this statute "a plaintiff must sue within six years after the claim first accrues." Catellus Dev. Corp., 31 Fed. Cl. at 404.

The statute of limitations must be strictly construed, Coon v. United States, 30 Fed. Cl. 531, 535 n.8, aff'd mem., 41 F.3d 1520 (Fed. Cir. 1994), and "cannot be waived by the court". Farrell v. United States, 9 Cl. Ct. 757, 759 (1986). See Soriano, 352 U.S. at 273-74. Therefore,

"if plaintiff's claims are not timely filed, they must, of course, be dismissed with prejudice." Coon, 30 Fed. Cl. at 534-35. See also Bath Iron Works Corp. v. United States, 27 Fed. Cl. 114, 124 (1992) ("The six year statute of limitations ... has been deemed jurisdictional and cannot be waived by the court on grounds of policy or equity."), aff'd, 20 F.3d 1567 (Fed. Cir. 1994).

"A claim first accrues when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." Japanese War Notes Claimants Ass'n of Phillipines, Inc. v. United States, 373 F.2d 356, 357 (Ct. Cl.), cert. denied, 389 U.S. 971 (1967). See Catawba Indian Tribe of S.C. v. United States, 982 F.2d 1564, 1570 (Fed. Cir.), cert. denied, 509 U.S. 904 (1993). See also Cristina Inv. Corp. v. United States, 40 Fed.Cl. 571, 576 (1998). For purposes of a Fifth Amendment taking claim "[i]t is axiomatic that a cause of action ... accrues at the time the taking occurs." Alliance of Descendants of Texas Land Grants v. United States, 27 Fed. Cl. 837, 843 (1993), aff'd 37 F.3d 1478 (Fed. Cir. 1994). August 12, 2004 Order at 14.

The present action was filed on April 3, 1998. August 12, 2004 Order at 21. Accordingly, any claims that accrued before April 3, 1992 are time-barred. Id. at 13. In order to ascertain the point in time when an alleged taking occurs, a court must identify (1) the property interest allegedly taken, (2) the governmental action which allegedly effected the taking, and (3) the time of such compensable act. State of Alaska v. United States, 32 Fed. Cl. 689, 698 (1995); see also Texas Land Grants, 27 Fed. Cl. at 843 (plaintiffs must show that event that effected their legal rights accrued within 6 years of filing of complaint).

As an initial matter, Plaintiffs dispute whether the formal moratorium ended in 1978. Plaintiffs contend that the formal moratorium did not end until 1983. ¶ 32. The Court has taken

note of this dispute. August 12, 2004 Order at 31. The undisputed facts, however, clarify that the moratorium ended on March 31, 1978. During the formal moratorium, Plaintiffs' predecessors in interest were prohibited from accessing the surface of Group C and received compensation in return. Ex. B at 4. As the district court stated in the related action, the fact that the moratorium ended on March 31, 1978, is set forth in letters from Plaintiffs' predecessor in interest to an employee, acknowledging that the moratorium would end on March 31, 1978, and Army communications. See id. at 5 (district court opinion in related action); Ex. C (letter from Plaintiffs' predecessor in interest); Ex. D (Army communications). Plaintiffs have no evidence that the formal moratorium continued after March 31, 1978. Nor do they have any records showing that they received the moratorium payments after this date. Nevertheless, this dispute is not material.

Either date – 1978 or 1983 – is well beyond the six-year statute of limitations period. Plaintiffs agree that there was a formal moratorium in place. ¶ 32. And as the Fifth Circuit held in the related action, Plaintiffs were on notice of the lifting of the moratorium. Central Pines, 274 F. 3d at 896 (the ending of the moratorium payments "provided notice to Burton that use of the servitude would now be allowed"). The FAC asserts that "[a]fter the termination of said moratorium, the United States continued to prohibit the mineral owner from using the surface of the lands for oil and gas exploration purposes, but made no payments for such takings." ¶ 33. Thus, by Plaintiffs' own acknowledgment, their claim accrued at the end of the formal moratorium, when the United States allegedly "continued" to deny access, "but made no payments for such takings." Id. Accordingly, even if Plaintiffs' alleged date when the moratorium ended (1983) is accepted, it is long before April 3, 1992 – the operative date for the

statute of limitations. This satisfies all requirements for Plaintiffs' claim to have accrued. The Court can identify (1) the property interest allegedly taken (Group C, ¶ 1), (2) the governmental action which allegedly effected such taking (denial of access to Group C, but no further payments for the denial, ¶ 33), and (3) the time of such compensable act (the lifting of the formal moratorium, ¶ 33). See State of Alaska, 32 Fed. Cl. at 698 (1995); Texas Land Grants, 27 Fed. Cl. at 843. Count II is therefore barred by the statute of limitations to the extent it is based on allegations of a "de facto moratorium."

**B. The continuing claim doctrine does not rescue Plaintiffs' stale claims.**

In response to Defendant's motion for judgment on the pleadings, Plaintiffs acknowledged that some of their takings claims regarding the Group C lands are time-barred. August 12, 2004 Order at 23. But Plaintiffs argued that a portion of their claims asserted under Count II are timely under the continuing claim doctrine. Id. However, as set forth in Defendant's motion for judgment on the pleadings, the continuing claim doctrine is wholly inapplicable to the present case.

Plaintiffs attempt to invoked the "continuing claim" doctrine by citing Friedman v. United States, 310 F.2d 381 (Ct. Cl. 1962), cert denied, 373 U.S. 932 (1963), and Mitchell v. United States, 10 Cl. Ct. 63, as modified, 10 Cl. Ct. 787 (1986). August 12, 2004 Order at 25. These cases demonstrate the narrow application of the continuing claim doctrine and why it is inapplicable in the present case.

Friedman was a "pay case," where a widow was suing for disability payments that she claimed had been arbitrarily denied her late husband. Friedman, 310 F.2d at 383. In analyzing the applicability of the statute of limitations, the court discussed the so-called "continuing claim"

theory and its historical relevance to military and civilian pay cases. Id. at 384-385. Most of these claims were for additional pay at a higher grade, greater compensation (under a statute or regulation), or seeking statutory increments and allowances.[4/] Id. The court stated that "where the payments are to be made periodically, each successive failure to make payment gives rise to a new claim upon which suit can be brought." Id. at 385. Thus, the Friedman court referred to "periodic pay claims ... arising within the six-year span" of the statute of limitations as not being barred by virtue of their inherent susceptibility to being broken down into independent and distinct wrongs. Friedman, 310 F.2d at 384. In essence, each time such a periodic claim arose and the plaintiff was not paid, the government allegedly committed a distinct wrong. See also, Burich v. United States, 366 F.2d 984, 986-987 (Ct. Cl. 1966) (failure by the government to make overtime payments to plaintiff constituted separate and independent violations of statute).

Friedman and other "pay cases" differ greatly from the present case because they can be

---

[4/] The court emphasized that the important characteristics of these continuing claim pay cases were:

> (a) Congress had not entrusted an administrative officer or tribunal with the determination of the claimant's eligibility for the particular pay he sought;
>
> (b) the cases turned on pure issues of law or on specific issues of fact which the court was to decide for itself (i.e., Congress had not established any administrative tribunal to decide either the factual or the legal questions); and
>
> (c) in general the cases called upon the court to resolve sharp and narrow factual issues not demanding judicial evaluation of broad concepts such as 'disability' (concepts which involve the weighing of numerous factors and considerations as well as the exercise of expertise and discretion).

These characteristics were also emphasized as the integral components to a "continuing claim" case in Hatter v. United States, 203 F.3d 795 (Fed. Cir. 2000), rev'd in part on other grounds, 532 U.S. 557 (2001).

broken down into a series of independent and distinct wrongs or events, each such wrong or event having its own associated damages. Each wrong constituted an alleged violation of a statute or regulation that occurred when the particular wrong occurred, independent of the accrual of other wrongs. Id. at 385. By their nature, these statutory violations could be independently and separately fixed as separate claims that occurred over a period of time.

Plaintiffs' "de facto moratorium" allegations, on the other hand, are all traceable to a single event – the lifting of the formal moratorium, when Defendant allegedly continued to deny access "but made no payment for such takings." ¶ 32 Therefore, the wrong alleged by Plaintiffs – governmental interference with access to their mineral rights – is unlike pay cases such as Friedman. It is traceable to a "seminal event" and not susceptible to being broken down to a series of wrongs that would each amount to an independent claim. See Hatter, 203 F. 3d at 800 (continuing claim doctrine does not apply if claim arises from "seminal event" that would constitute one cause of action for statute of limitation purposes); Boling v. United States, 220 F. 3d 1365, 1373 (Fed. Cir. 2000) (doctrine "does not apply in cases where a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach"). Ariadne Fin. Services Prop., Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998) (doctrine inapplicable where a single event produces "ill effects that accumulate over time").

Plaintiffs' reliance on Mitchell is similarly misplaced. In Mitchell, Native Americans brought suit against the Federal Government for mismanagement of tribal forests, based upon the Government's sale of timber for less than its market value, and on the Government's failure to replant trees (regenerate) as required by statute. Mitchell, 10 Cl. Ct. at 66. Specifically, the

plaintiffs claimed that the Secretary of the Interior, acting through the Bureau of Indian Affairs ("BIA"), had failed to properly discharge his duties under federal statutes that assigned to him various responsibilities with respect to timber. Id. The focus of the continuing claim analysis rested, in part, upon the alleged failure of BIA to restock portions of the timber allotments that had been cut or burned over. Id. at 77. The court concluded that the BIA had a continuing duty to maintain the tracts of timberland in a state of productivity. Mitchell v. United States, 10 Cl. Ct. 787, 788 (1986). The court viewed this ongoing breach of this "continuing duty as creating a series of individual actionable wrongs." Id. Therefore, "the existence of a continuing duty to regenerate mean[t] that on each day the BIA failed in its duty to regenerate a given [area], there arose a new cause of action." Id. The court concluded that "those causes of action which arose in the six-year limitations period may be sued upon." Id.

Mitchell is also distinguishable from the present case. Like the "pay cases," the court in Mitchell found that BIA had failed in its statutory duty to the plaintiffs, each breach amounting to a separate cause of action. The defendant in Mitchell had a continuing "duty to maintain each tract of Indian timberland in a state of continuous productivity and to plant whenever necessary to achieve that end." Id. at 788. Therefore, each day that BIA neglected its duty constituted a separate and distinct breach of the agency's statutory duty. In the present case, Plaintiffs are unable to point to a specific duty that Defendant breached -- much less one that Defendant breached over a period of time, each giving rise to a separate and independent action. If Plaintiffs' claim accrued at all, it was when the moratorium was lifted. Accordingly, this doctrine is inapplicable. See Boling, 220 F.3d at 1373 (Fed. Cir. 2000) (refusing to apply continuing claim doctrine to environmental takings claims when claim was traceable back to a

single breach that resulted in a series of deleterious effects); Fallini v. United States, 56 F. 3d 1378, 1380, 1382-84 (Fed. Cir. 1995) (statute of limitations bars claim; congress passing statute requiring the plaintiffs to allow wild horses to drink on their property was single event causing takings claim to accrue, despite fact that "every drink" was "continuing economic burden").

In ruling on the motion for judgment on the pleadings, the Court expressed skepticism at Plaintiffs' ability to invoke the continuing claims doctrine. August 12, 2004 Order at 29. The Court found that Plaintiffs offered few details to bolster their assertion that the case involves "numerous wrongful acts by the [D]efendant preventing [P]laintiffs' access." Id. The Court stated that Plaintiffs made only "vague allegations" that "lack specifics." But the Court ultimately denied Defendant's motion as to Count II. Id. at 31. The Court found that although Plaintiffs' allegations lacked specifics, the procedural posture of the case required the Court to assume the truth of these allegations and grant reasonable inferences in Plaintiffs' favor. Id. at 30. Accordingly, the Court deferred ruling on Defendant's statute of limitations arguments. Id. at 31. The Court did find that "the applicability of the continuing claim doctrine will determine whether or not Count II is time-barred." Id. at 24. But the Court found that it was not in a position to determine such applicability without further development of the facts. Id. at 29. The Court thus instructed the parties to complete discovery. Anticipating a motion for summary judgment, the Court directed the parties to outline attempts by Plaintiffs to access their Group C mineral rights since 1978, and how, if at all, Defendant acted in response. Id. at 32. The parties have now completed discovery and the record makes clear that Plaintiffs have not made any attempts to access the surface of Group C. Accordingly, the continuing claim doctrine does not apply, Count II is time-barred, and summary judgment is appropriate at this time.

Defendant submitted written interrogatories to Plaintiffs asking what actions Plaintiffs took to exercise their mineral rights on Group C since 1978, including what "portion or parcel(s) [Plaintiffs] attempted to access." Ex. F at 9. Plaintiffs' responses demonstrate there have been no such attempts. Plaintiffs acknowledge that they did not make any attempts to access Group C between 1978 and 1991. See Id. at 9 ("Between 1978 and 1991 Plaintiffs have no record of attempts to exercise mineral rights on Group C.") Plaintiffs then discuss allegations of attempts to lease their Group C mineral rights to third parties, and the Plaintiffs' dispute over ownership with the United States. But Plaintiffs are unable to point to any attempts by Plaintiffs or anyone acting on their behalf to access the surface of the Group C lands since 1978. Id. at 9-12. When questioned during depositions, Plaintiffs were again unable to point to any attempt to access the surface of Group C. March 16, 2006 Deposition of Plaintiff William B. Lawton, Co., Exhibit G at 31-34.[5]/

Plaintiffs testified that they pursued negotiations with third parties to lease portions of the Group C lands. Id. at 32. And that third parties who were allegedly considering taking leases from Plaintiffs claimed to have spoken to the Army. Id. at 33-34. These third parties allegedly told Plaintiffs that they decided not to take leases for Group C because of the Army and decided to "go and spend their money elsewhere." Id. at 33. But Plaintiffs testified that they have no personal knowledge of any of these alleged actions by the Army, nor could they point to any follow up communications with the Army to confirm if they were true. Id. And Plaintiffs could not point to any attempt by Plaintiffs or anyone acting on their behalf to attempt to access the surface of Group C. Id. at 31-34. As the district court found in the related action, these kinds of

[5]/ William Drost testified on behalf of William B. Lawton Co. Id.

vague allegations are insufficient, as a matter of law, to show a denial of access to Plaintiffs' mineral rights. Ex. B at 26, n. 18. And because Plaintiffs are unable to establish any attempts by Plaintiffs to access the surface of Group C since 1978 -- or actions by the Defendant in response -- the continuing claim doctrine does not apply. See August 12, 2004 Order at 31.

As the Court noted in its prior order, the continuing claim doctrine does not apply if there is a "seminal event" that would constitute one cause of action for the purposes of the statute of limitations. August 12, 2004 Order at 24 (citing Hatter v. United States, 203 F. 3d 795, 797-98 (Fed. Cir. 2000) (en banc). Here, the end of the moratorium is the seminal event that would constitute one cause of action. Unlike the pay cases cited by Plaintiffs, the lifting of the moratorium was a single event where the United States stopped compensating Plaintiffs for their alleged loss of access to the surface of Group C. The continuing claim doctrine is therefore inapplicable. See Brown Park Estate-Fairfield Dev. Co. v. United States, 127 F. 3d 1449, 1456 (Fed. Cir. 1997) (doctrine does not apply to "a claim based upon a single distinct event, which may have continued ill effects later on"); Davidson v. United States, 66 Fed. Cl. 206, 210 (2005) (Damich, C.J.) (granting motion to dismiss; continuing claim doctrine inapplicable where "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence").

As the Fifth Circuit held in the related action, Plaintiffs were aware of the lifting of the moratorium in 1978. Central Pines, 274 F. 3d at 896, n.74. If, as Plaintiffs allege, the United States "continued to prohibit the mineral owner from using the surface of the lands" through a "de facto moratorium," then Plaintiffs' claim accrued as soon as the United States stopped making the payments in 1978. ¶¶ 33, 39. Thus, as in Davidson, the continuing claim doctrine

does not apply and Plaintiffs' claim is time-barred. Id. at 209.

**C. Plaintiffs' "de facto moratorium" allegations fail to state a claim.**

Even if the Court were to look past the fact that they are time-barred, Plaintiffs' "de facto moratorium" allegations fail to state a claim. Plaintiffs allege that after the formal moratorium ended, it was the "secret policy" of the Army to continue to deny access to Group C through a "de facto moratorium." ¶ 16. As set forth above, the record shows that Plaintiffs never attempted to access the surface of Group C. For this reason alone, Plaintiffs' "de facto moratorium" allegations fail to state a claim and should be dismissed. Moreover, the allegation that the Army prevented Plaintiffs from leasing Group C to third parties does not support Plaintiffs' claim.

Plaintiffs attempt to overcome their lack of attempts to access Group C by alleging that the Army prevented Plaintiffs from entering into seismic agreements or mineral leases for Group C by informing prospective parties of "the almost insurmountable requirements for obtaining any type of access." ¶35. In their interrogatory responses, Plaintiffs state that between 1995 and 1997, several third party operators were interested in leasing the Group C lands from Plaintiffs, but did not do so because the Army informed them of insurmountable obstacles. Ex. F at 9-12. These assertions do not support Plaintiffs' allegations that they were denied access to the surface of Group C.

Plaintiffs testified during depositions that they attempted to access the Group C lands by "encourag[ing] mineral development of our properties." Ex. G at 34. Plaintiffs allege that they were not able to complete these leases because of the actions of the Army. Plaintiffs allegedly heard back from potential third party operators that these operators decided not to lease because

of the Army. Id. at 31-34. As set forth above, Plaintiffs testified that they have no first-hand knowledge of these alleged actions by the Army. Id. at 33-34. Plaintiffs acknowledge that they had no communications with the Army and know of these alleged actions only from alleged conversations with third party operators. Id. Plaintiffs testified that after allegedly hearing about these issues from potential lessees, Plaintiffs were "angry." December 13, 2005 Deposition of William Drost, Exhibit H at 73-74.[6]/ But Plaintiffs were unable to point to any follow up communications with the Army to confirm if they were true, or question if indeed the Army was impeding Plaintiffs' access to Group C. Id.

In addition, during discovery, the parties deposed several individuals from the third party operators identified in the FAC as potential lessees of Plaintiffs Group C mineral rights. ¶ 35.[7]/ The testimony of these individuals does not support Plaintiffs' allegations. There may have been informal meetings between individuals from the Army and third party operators who were allegedly considering leasing portions of Group C. And lessees or potential lessees may have had informational meetings with the Army. But there is no evidence that Plaintiffs, Plaintiffs' lessees, or anyone acting on Plaintiffs' behalf ever requested permission from the Army to access the surface of Group C. Nor is there any evidence that the Army ever told Plaintiffs', Plaintiffs' lessees or anyone acting on Plaintiffs' behalf, that they could not access the surface of Group C.

---

[6]/ Mr. Drost testified on behalf of Plaintiffs' Tower Minerals; D, S &T, Inc.; Drost & Brame Inc.; and Central Pines Land Company.

[7]/ Defendant deposed Steven L. Hochstein, Bryan T. Simmons, David V. Hamilton and Davis E. Richards, all formerly of Sonat Exploration Company; George P. Denny, Thomas L. Price, Steven Dixon, Henry Hood and Gary S. Dunlap, from Chesapeake Operating, Inc.; Mel Fife, formerly of Belco Oil and Gas Corporation; and Darin Zanovich, formerly of Swift Energy Corporation.

See July 19, 2006 Deposition of Bryan T. Simmons, Exhibit N at 32 (no knowledge of any problems from the Army that would have prevented Sonat from drilling or purchasing leases); July 19, 2006 Deposition of Steven L. Hochstein, Exhibit K at 22-28 (meetings between Sonat and the Army described as "introductory" and "successful;" Army described as "accommodating"); July 18, 2006 Deposition of George P. Denny, Exhibit L at 18-21 (testifying regarding meetings between Chesapeake and the Army; "general discussion," no memory of any request by Chesapeake to access the surface of Group C); May 23, 2006 Deposition of Mel Fife, Exhibit M at 42-43 (no formal request was made of the Army for permission to access Group C; alleges Belco had informal meeting with individuals from the Army and that the Army was not going to allow drilling, but acknowledges that there is no documentary evidence of alleged meeting, that Belco was not a lessee or representative of Plaintiffs, and that the alleged meeting was informal).

As the district court and the Fifth Circuit held in the related action, vague assertions that the Army was not going to allow anyone to drill are insufficient to show that the Army denied access. Ex. B at 26; 274 F. 3d at 896 ("There is also no evidence that Burton or Appellants drilled or even attempted to enter the servitude lands after the moratorium ended. Nor did they request permission to do so from the Army.. . . The record provides us with no evidence that, after the moratorium ended, the United States created an obstacle to use of the servitude lands.")[8]/

---

[8]/ Of course, the district court and the Fifth Circuit were dealing with the question of prescription for nonuse. But the issue for prescription – alleged denial of access to the surface – was the same as in the present case and based on the same factual allegations. See 274 F. 3d at 894. The decisions in the related action are therefore instructive.

## II. Plaintiffs' Allegations Regarding "Military Use" and "Dangerous Conditions" Fail to State a Claim.

Plaintiffs also allege that the United States has taken their property interest through "military use of the Property inconsistent with mineral activities." ¶ 39. Specifically, Plaintiffs assert that as a result of this "military use," "portions of Group C became too contaminated and/or dangerous for mineral operations." Ex. F at 6 (e.g., "bombs," "unexploded ordnance"). According to Plaintiffs, the "dangerous or contaminated condition of portions of Group C constitutes a taking of Plaintiffs' property interest." Id. But because, as Plaintiffs acknowledge, the Army began using Group C as a base in 1942 (¶ 15), these claims accrued long before April 3, 1992.

### A. The "military use" and "dangerous conditions" allegations are barred by the statute of limitations.

To the extent Count II is based on allegations of "military use" of Group C, or "dangerous conditions," this Count is barred by the statute of limitations. As set forth above, in order to ascertain the point in time when an alleged taking occurred, a court must identify the property interest allegedly taken, the governmental action which allegedly effected the taking, and the time of such compensable act. State of Alaska v. United States, 32 Fed. Cl. at 698. Plaintiffs acknowledge that the use of the surface of Group C as a military base dates back to 1942. See ¶ 15 ("Beginning in 1942, the United States of America began using [Group C] for small arms firing ranges, tank firing ranges, artillery range impact areas, bombing ranges, maneuver areas, and other related military training and facilities."); Ex. F at 6 ("[s]ince acquisition of the surface of Group C properties in 1943, a substantial portion of the property has been, in fact, subject to military operations including bombing practice, artillery practice, small arms fire and troop

maneuvers by the United States Army and Air Force. Unexploded bombs are found and disposed of from Group C.")

Plaintiffs have also acknowledged that the alleged "dangerous conditions" that stem from the military use of Group C date back to when the military use of Group C began. See December 13, 2005 Deposition of Plaintiff Jack Lawton, Jr., Exhibit I at 28-31 (stating that United States created "impediments" to Plaintiffs' access to Group C including "artillery shells" that have "been accumulating a long time," dating back to the "late 70's").[9]/

Between 1943 and 1978, the United States imposed a drilling and operations moratorium on the Group C lands. Ex. B at 3-4. During the moratorium, Plaintiffs received compensation. Id. at 4. After the termination of the moratorium, Plaintiffs no longer received compensation. ¶ 32.

The FAC does not specify whether the "military use" of Group C and the "dangerous conditions" permanently prevented mineral exploration and development of Group C. If so, Plaintiffs' claim accrued in 1942 when the military use began. ¶ 15. If not, Plaintiffs' claim accrued, at the latest, in 1978, when "[a]fter termination of said moratorium, the United States of America continued to prohibit the mineral owner from using the surface of the lands . . . but made no payments for such takings." ¶ 33.[10]/ Therefore, to the extent Count II is based on these "military use" and "dangerous conditions" allegations it must be dismissed. See State of Alaska

---

[9]/ Mr. Lawton testified on behalf of himself and Plaintiff Central Pines Land Company.

[10]/ Again, Plaintiffs' allegation that the moratorium was not lifted until 1983 is without support and contrary to the evidence. See Ex. B at 4; Exs. C, D. But even if true, Plaintiffs' claim is still time-barred because it accrued long before April 3, 1992, the operative date for the statute of limitations.

v. United States, 32 Fed. Cl. at 698.

**B. The continuing claim doctrine does not rescue Plaintiffs' stale claims.**

The continuing claim doctrine is inapplicable to Plaintiffs' "dangerous conditions" and "military use" arguments for the same reasons set forth above. Here, Plaintiffs acknowledge that the "dangerous conditions" that they allege date back to the 1940s. ¶ 15. The "seminal event" was, therefore, when the United States began the military use of the property in 1942. Thus Plaintiffs' claim accrued, at the latest, when the moratorium was lifted and the United States ceased making payments to the Plaintiffs for the alleged loss of access to Group C. Ariadne Financial Services Property, Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998) (doctrine inapplicable where a single event produces "ill effects that accumulate over time"). Accordingly, to the extent Count II is based on "military use" of Group C and "dangerous conditions" it is barred by the statute of limitations and should be dismissed.

**C. Plaintiffs' allegations regarding "dangerous conditions" fail as a matter of law.**

Even if the Court were to look past the fact that Plaintiffs' "military use" and "dangerous conditions" allegations are time-barred, they nonetheless fail as a matter of law. Plaintiffs argue that portions of Group C are "too contaminated and/or dangerous for mineral operations." Ex. C at 6. But even if true, these conditions are not material because they did not impede Plaintiffs' access to the Group C minerals since April 3, 1992.[11]/

As the Fifth Circuit explained in the related action, under Louisiana law, the fact that a

---

[11]/ Plaintiffs "concede that any claims related to events that occurred before April 3, 1992 (six years before the suit was filed) are time-barred." August 12, 2004 Order at 23. Plaintiffs seek "to recover damages for any temporary takings . . . that accrued in the time period spanning April 3, 1992, to the [filing of this action]." Id.

portion of a servitude is inaccessible, does not constitute a denial of access so long as other portions of the servitude remain available. Central Pines, 274 F. 3d 896 (no denial of access if alleged impediment "forecloses operations on only a portion of the land burdened by the servitude"). Indeed Plaintiffs leased portions of Group C and received over $2 million in income from these leases. Plaintiffs' Response to Defendant's Second Set of Interrogatories, Exhibit J at 2. Accordingly, even if Plaintiffs' "dangerous conditions" allegations are true, they do not affect access to Group C and are immaterial as a matter of law. See e.g., 274 F. 3d 896.

## III. Plaintiffs' Allegations Regarding the United States' Claim of Ownership Fail to State a Claim.

Of the approximately 21,000 acres of Group C lands, approximately 5,000 acres, on the Southwest peninsula are part of the Kisatchie National Forest. See Ex. E. In 1992 the United States made a determination that Plaintiffs' mineral servitude for these lands, as well as portions of the Group A and B lands, had prescribed for non use. After making this determination, in 1995, the BLM began offering these lands to the public for competitive leasing.[12]/ Ex. F at 2-4. In the related litigation, the Fifth Circuit ultimately held that the United States' determination was correct as to the Group A and B lands, but incorrect as to the Group C lands. 274 F. 3d 881. Plaintiffs allege that these actions – asserting ownership and leasing – created a cloud on Plaintiffs' title and limited Plaintiffs' ability to exercise their mineral rights. FAC ¶ 39; Ex. F at 2-5. But as the district court found in the related action, these allegations fail as a matter of law. Moreover, the fact that Plaintiffs did lease a majority of the Forest Service portion of Group C

[12]/ The United States' claim of ownership and leasing activity applied only to the Kisatchie National Forest portion of Group C. Ex. F at 3. The United States neither claimed ownership, offered to lease, or leased any of the Fort Polk portions of Group C.

shows that this allegation is without merit.

**A. Plaintiffs' allegations regarding the United States' leasing of portions of Group C were considered and rejected by the district court in the related action.**

In the related action, the issue before the district court was whether Plaintiffs' mineral rights in Groups A, B, and C had prescribed on account of nonuse. Ex. B. at 6. Plaintiffs argued, inter alia, that their mineral rights did not prescribe, despite Plaintiffs' nonuse. Instead, Plaintiffs argued, the United States' actions in impeding access to the mineral servitude created obstacles that suspended prescription. Id. at 14. As the district court noted, where a surface owner prevents the mineral servitude owner from accessing his servitude, this suspends the prescriptive period. Id. Thus, one of the issues before the district court was very similar, if not the same, as one of the issues before this Court – whether the alleged actions of Defendant indeed prevented Plaintiffs from accessing their mineral rights. The district court found that Defendant's actions did not. Ex. B at 34. With regard to the allegation that the claim of ownership and leasing activity by the United States prevented access – the same allegation made here – the district court stated:

> The plaintiffs point out the government leased the minerals to other companies beginning in 1992.. . . The surface owner's leasing of the minerals underlying his land to someone other than the servitude owner does not in and of itself create an obstacle.

Ex. B at 33, n. 23 (citing Gayoso Co. v. Arkansas Natural Gas Corp., 145 So. 677, 679-80 (La. 1933), and Gailey v. McFarlain, 193 So. 570, 578-79 (La. 1940).

Plaintiffs' allegations in the present action must fail for the same reasons. To the extent Count II is based on Defendant's claim of ownership and leasing activity, it fails as a matter of law and should be dismissed.

**B. Plaintiffs' allegations regarding leasing by the United States fail to state a claim.**

Moreover, the allegation regarding claim of ownership and leasing activity by the United States is belied by the facts. First and foremost, Plaintiffs did lease a majority of the Forest Service portion of the Group C lands. Ex. F at 5. This demonstrates that the claim of ownership did not prevent Plaintiffs from leasing the Forest Service portions of the Group C lands.

A dispute over ownership is not uncommon and an operator will typically take a "protection lease" – that is lease from all disputing parties– and allow the parties to resolve the dispute themselves. That is exactly what happened here. The disputed lands were leased by both the United States and Plaintiffs. Id. And Plaintiffs received over $2 million in income from these leases. Ex. J at 2. The reasons identified by the district court in the related action, as well as the fact that Plaintiffs did lease a majority of the Forest Service portion of the Group C lands, are sufficient to find that the allegations regarding the United States' leasing activity are without merit.

## CONCLUSION

As set forth above, because Plaintiffs' are unable to identify any unsuccessful attempts to access the Group C lands after 1978, their FAC is barred by the applicable statute of limitations, 28 U.S.C. § 2501. In the alternative, and for the same reason, Plaintiffs fail to state a claim upon which relief can be granted. The allegations in Count II regarding (1) a secret policy and de facto moratorium; (2) dangerous conditions and military use; and (3) the claim of ownership of the Forest Service portions of Group C all fail to state a claim. Accordingly, Defendant is entitled to judgment as a matter of law on Count II. Because this is the only remaining count in the FAC, the FAC should be dismissed with prejudice.

Dated: December 15, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Alex Kriegsman*

ALEX KRIEGSMAN
Trial Attorney
Natural Resources Section
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-3022
Fax: (202) 305-0506

LTC MICHAEL D. GRAHAM
CAPT. JAMES N. HEWITT
Litigation Attorneys
U.S. Army Environmental Law Division
901 N. Stuart Street, Suite 400
Arlington, VA 22203-1837
Tel: (703) 696-1596
Fax: (703) 696-2940

MATTHEW A. TILDEN, ESQ.
Office of the General Counsel
U.S. Department of Agriculture
1718 Peachtree Road, NW - Suite 576
Atlanta, GA 30309-2409
Tel. 404-347-1086
Fax. 404-347-1065

DENNIS DAUGHERTY
Attorney
Department of the Interior
Office of the Solicitor
Division of Mineral Resources
Branch of Onshore Minerals
1849 C St., N.W., Rm 6312

Washington, DC 20240
Tel: (202) 208-5038
Fax: (202) 208-2225

ATTORNEYS FOR DEFENDANT