# DISPOSITION FORM

(AR 340-15)

| OFFICE SYMBOL OR FILE REFERENCE | SUBJECT |
|---|---|
| SWFRE-A | Telephone Call -- Fort Polk Mineral Moratorium, Civil Nos. 831 and 3108; and 2600 Acres in Cantonment Area |

THRU Ch, Acq Br
Ch, RE Div
TO RE Files

FROM Messrs. Adams and Wilder DATE 19 Jan 67 CMT 1
Mr.Wilder/Mr.Adams/mla 211

1. On 4 January 1967 Mr. Leven H. Harris, Assistant U. S. Attorney, Shreveport, Louisiana, called Mr. James E. Kitterman and requested a conference telephone call on the following day between Mr. Zeidner, Department of Justice in Washington, Mr. Gearheart, and himself. Mr. Gearheart was on travel and was out of the city. Mr. Kitterman requested that the undersigned and Mr. Thomas Adams participate in the conference telephone call concerning minerals at Fort Polk. The conference telephone conversation was held the following day as outlined above beginning at 1:15 p.m. and lasting to approximately 2:25 p.m., with Mr. Zeidner doing most of the talking.

2. Mr. Zeidner said that these civil actions had been pending for many years with annual extensions since expiration of the five-year terms, the present moratoriums being included in Civil Nos. 9516 and 9517. He said that the Government's annual disbursements for these cases, filed back in the 1940's and early 1950's, plus the cost of the U. S. Marshal, expenses of the District Court, and cost of services of the U. S. Attorney, had approximated one million dollars. He asked if it seemed feasible for the Government to purchase these minerals and, if so, how much it would cost. Mr. Wilder said that it would probably cost in excess of one-half million dollars based upon Spice's recent appraisal of $6 per acre. Mr. Zeidner asked how much the annual cost was per acre, and he was advised that the last stipulations were based upon an appraisal of annual rental or moratorium value of 95¢ per acre, or approximately $70,000 per annum.

3. Following this, Mr. Zeidner pointed out that the using service needed to indicate whether a requirement existed for these moratoriums. He was told that the using service had recently indicated a continuing need.

4. Mr. Zeidner discussed the law of prescription of minerals in Louisiana and said that he thought the civil actions should be dropped and not filed, unless the Department of the Army purchased the minerals. Mr. Zeidner doubted that such purchase would be authorized, since the question had come up before and no one wanted to say that it would be a perpetual need. He also said that, because of shortage of funds resulting from the Viet Nam conflict, he thought only a moratorium would be authorized. Mr. Zeidner was against this and said that if this purchase was not authorized he thought the Commanding General could put up signs, refuse entry to mineral owners, and do nothing else. Mr. Zeidner thought that if someone resisted these exclusions from the property, each instance could be handled as a separate claim or law suit against the Government. Mr. Wilder was against this, pointing to the Fifth Amendment. He said it was the policy of this District not to compel a landowner to file a claim or institute a law suit. Mr. Wilder felt that it would be grossly unfair to the landowner to make him take such action. Mr. Zeidner did not agree with this and again referred to the law of prescription of minerals in Louisiana. Mr. Wilder pointed out that the Government had not previously claimed these minerals and would be estopped to deny the mineral owners'

SWFRE-A 19 Jan 67
SUBJECT: Telephone Call - Fort Polk Mineral Moratorium, Civil Nos. 831 and 3108; and 2600 Acres in Cantonment Area

title. Mr. Wilder said that these minerals were in a different category to the 2600 acres of minerals in the cantonment area. As to the latter, moratoriums had not been filed and the Government was not estopped to claim these minerals. Mr. Zeidner saw the different fact situation and agreed that the Government could exercise complete control of the 2600 acres.

5. Mr. Zeidner stated that he had discussed this matter that morning with Mr. E. L. Ingram, Jr., in OCE who is handling these two civil actions. Mr. Zeidner advised him that the 2600 mineral acres in the cantonment area were being handled by Mr. H. V. Saunders. Mr. Zeidner stated that the suit to quiet title in the cantonment area would not be filed, since the Department of Justice had written a legal opinion stating that the Government owned the minerals. Mr. Wilder pointed out to him that the Department of Justice' opinion did not state that the Government owned the minerals; that the opinion was "ifey" and only stated that the Government should take a calculated risk. Mr. Wilder again asked for a legal opinion, holding without reservation that the Government did own the minerals, and stated that if Mr. Zeidner was not prepared to write such an opinion that he would recommend to his superiors that the suit be filed forthwith. It was pointed out that 40 U.S. Code 255 provides that: "No public money shall be expended upon any site or land purchased by the United States for the purposes of erecting thereon any armory, arsenal, fort, fortification, navy yard, customhouse, lighthouse, or other public building of any kind whatever, until the written opinion of the Attorney General shall be had in favor of the validity of the title." Although this statute does not say "fee simple title," Mr. Wilder was of the opinion that it had been so interpreted by the Department of the Army and therefore the Government's undisputed title to the minerals would be a prerequisite before the Department of the Army would release funds for permanent construction of barracks, buildings, etc. Mr. Zeidner thought that if the mineral owners in the cantonment area claimed title to the minerals they should sue the Government. Mr. Wilder stated that he was against any involuntary taking and again recommended that the suit to quiet title be filed.

6. Mr. Zeidner thought that the Government should not buy the minerals at Matagorda Island. Mr. Wilder stated that the mineral titles in the different states were entirely different and he would again recommend that the Government not be a party to any taking of minerals without paying the mineral owners just compensation.

7. Mr. Zeidner said he would like to see a meeting between himself and representatives of this District and the U. S. Attorney's office with the Commanding General. Mr. Wilder told him that he thought it best for him to write us, offering to meet in this manner. Mr. Zeidner then dictated a letter over the telephone for Mr. Harris to send to this office. The letter (later sent by Mr. Harris) proposed the joint meeting.

SWFRE-A
SUBJECT: Telephone Call - Fort Polk Mineral Moratorium, Civil Nos. 831 and 3108; and 2600 Acres in Cantonment Area

19 Jan 67

8. Mr. Zeidner was cautioned to the effect that any arrangements should be coordinated not only with Mr. Harris and the using service but also with OCE. Mr. Zeidner thought, however, that initial action should come locally.

9. Mr. Zeidner was advised that this office had already sent a report forward through SWD to OCE recommending the following:

(a) A suit be filed by the Government claiming the 2600 acres of minerals.

(b) Moratoriums be discontinued and pending civil actions be dropped as to the 77,545 acres of mineral moratoriums.

(c) A real estate directive be issued to acquire a perpetual right in the minerals under the 77,545 acres.

10. Mr. Wilder did agree, however, to staff and process the request in the letter of the U. S. Attorney's office. He thought this District might wish to send it to Fourth Army.

11. Mr. Zeidner said he only wanted to urge action to reduce the expense of continuously renewing these moratoriums and again expressed the belief that the Courts would sustain the Government's rights to the minerals under the prescription laws of the State.

12. Mr. Wilder said that the abstract of title was not available here and that no opinion furnished the Government had heretofore established its ownership of these minerals.

Darwin L Wilder
DARWIN L. WILDER
Chief, Condemnation Section

Tom Adams
TOM ADAMS
Attorney