Mr. Randle/hla 2111

SWFRE-AC (SWFRE-AC 28 May 74) 3rd Ind
SUBJECT: Congressional Inquiry, Fort Polk, Louisiana

DA, Fort Worth District, Corps of Engineers, P. O. Box 17300, Fort Worth, Texas 76102, 26 Jun 74

TO: HQDA (DAEN-REA-C), WASH DC 20314

1. In answer to the first question in paragraph 1, the potential effect of allowing mineral exploration over that portion of the post that does not have the moratorium could seriously interfere with the Army training program.

2. In answer to your second question in paragraph 1, a map was mailed on 18 June 1974 to the Commander, Fort Polk, showing the location of the tract of land under which Mr. Leff has a mineral interest, with the request for a determination as to whether Mr. Leff would be allowed to explore for minerals under this tract. An answer to this request has not been received.

3. In answer to your question in the first sentence of paragraph 2, the approximate acreage on Fort Polk in which minerals are outstanding without the moratorium is 105,000 acres. We have been informally advised that exploration for these minerals would not be allowed at the present time. A conference at Fort Polk is scheduled for 27 June regarding mineral acquisition and the possibility of permitting exploration on lands in Fort Polk, which may change their present position on permitting exploration.

4. There are 152,737 acres in Fort Polk Military Reservation. There are 84,000 acres with minerals outstanding which were transferred by Memorandum of Understanding from the Department of Agriculture on 2 November 1967. Another 63,627 acres have been acquired in fee with minerals outstanding. There are 2,900 acres acquired in fee including minerals. We have 1,823 leased acres and 386 easement acres. This would approximate 150,000 acres with minerals outstanding at Fort Polk.

5. In addition to Fort Polk Military Reservation, Peason Ridge Artillery Range, located 12 miles northeast of Fort Polk, is under their control. There are 33,488 acres in the Peason Ridge Artillery Range consisting of 480 acres of Forest Service land and the balance acquired in fee with minerals outstanding on 32,279 acres.

6. The exact extent of minerals outstanding at Fort Polk is not known at this time, but we have initiated a title search to make this determination. We have requested and received copies of eleven deeds covering 80,414.84 acres of Forest Service land. Three deeds covering 110.23 acres show that the minerals were acquired by Forest Service, and eight deeds covering 80,303.71 acres show that the minerals were excepted and were not acquired by Forest Service. Seven of these deeds covering 75,314.76 acres provided

SWFRE-AC (SWFRE-AC 28 May 74) 3rd Ind 26 Jun 74
SUBJECT: Congressional Inquiry, Fort Polk, Louisiana

for minerals to be excepted for a period of 10 years unless exploration for minerals were performed during the 10 years, which would extend the time of the mineral ownership. The other deed covering 4,988.95 acres excepted the minerals for a period of 25 years from 31 December 1936. Some 3,000 acres of the 4,988.95 acres have been under a moratorium since 1950. This represents an obstacle under Article 792 of the Louisiana Statutes which provides that the prescription of non-usage will not run as long as this obstacle remains. Additional title search will be made as requested to determine the exact extent of all minerals outstanding at Fort Polk, but the search will not determine the current ownership of these minerals. A determination of the current ownership of minerals outstanding at Fort Polk and Peason Ridge Artillery Range would likely require the services of an attorney and two realty assistants for a one-year period, and we do not have the available man power or funds at this time for this title search.

7. In answer to your request as to the possible effect of the Louisiana Statutes on prescription of mineral rights, the 84,000 acres of Forest Service land was acquired prior to the passage of Article 315 by the Louisiana Legislature in 1940, which made mineral estates imprescriptible in land acquired by the U. S. Government. We understand the Department of Justice is investigating the possibility of obtaining a declaratory judgment in favor of the U. S. Government regarding the minerals under Forest Service land. The 63,627 acres acquired by the Army in fee with minerals outstanding after the passage of Article 315 would prohibit prescription of the minerals running in favor of the United States. Court of Appeals rejected the Government's argument that Article 315 was unconstitutionally discriminatory against the United States, United States v. Nebo Oil Co., 190 F. 2nd 1003 (CA 51951). The United States Supreme Court has not ruled on Article 315 being constitutional, United States v. Little Misere Land Company, Inc., et al., 41LW4839, 18 June 1973. It is expected that the mineral owner of 11,000 acres of Forest Service land in the moratorium area will substantiate a claim that he did the necessary exploratory work to toll the running of prescription against this mineral ownership prior to October 1950, at which time it was placed under moratorium. The Government could not thus prove ownership.

8. The Department of Justice will be represented at the conference at Fort Polk on 27 June, and may state that they have made their determination to ask for a declaratory judgment.

JOE H. SHEARD
Colonel, CE
District Engineer

Copy furnished:
Div Engr, SWD

Ch, PAO w/cy 1st & 2nd Inds

RANDLE
WILDER
[illegible]
CRAFT SWFPA
HAWKINS SWFE
X
SHEARD SWFDE
MAIL
RE FILES