STANDARD OPERATING PROCEDURES FOR
EXPLORATORY AND FIELD DEVELOPMENT
DRILLING OF OIL/GAS WELLS

SOP No. 32X-2 22 August 1979

1. PURPOSE. The purpose of this document is to establish procedural requirements, to assign responsibilities, and to list guidelines for oil and gas exploratory drilling and drillings in a developed field.

2. RESPONSIBILITIES. The Directorate of Facilities Engineering (DFE) is responsible for carrying out the directives of this document. Specific functions are assigned to the Environmental and Energy Control Office (EECO) and the Real Property Office (RPO) of DFE as noted. Responsibilities of the Operator (the company, corporation, or individual that is causing to be conducted or is conducting drilling production or associated activities) has responsibilities as delineated.

3. PROCEDURAL GUIDELINES.

a. Pre-operational:

(1) Operator shall furnish locations of proposed roads, drilling site, and pit locations to the RPO of the DFE. The Operator shall arrange for an archaeological survey of the proposed drilling sites, pipelines, and roads. This survey shall be conducted by a professional archaeologist who is acceptable to the EECO.

(2) Before a drilling permit may be issued, the RPO will:

(a) Determine compatibility of the site with existing land use plans.

(b) Determine compatibility of the site with Master Plan program.

(3) EECO will:

(a) Conduct an on-the-ground review of the site to evaluate the environmental impacts of drilling activities on:

-1- Ecological balance of the area.

-2- Habitats of endangered or threatened species.

-3- Historical sites.

-4- Drainage and erosion potential.

-5- Merchantable timber.

-6- Quality of water in nearby streams.

900406

Incl 4

(b) The significance of any archaeological site(s) found by the archaeologist shall be evaluated by the EECO in the context of the overall cultural resource management objectives of the installation. The decision to relocate because of an adverse impact on an archaeological site will be based upon this evaluation.

(c) Prepare, or cause to be prepared, an Environmental Impact Assessment or, if necessary, an Environmental Impact Statement.

(d) Coordinate planned drilling operations with the US Forest Service when it is appropriate.

(4) The RPO and EECO will jointly determine if the proposed access route should become a permanent part of the military transportation system.

(5) Should a permit be granted to drill on the proposed site, the Operator and representatives of the RPO and EECO shall meet in a "Pre-Operational Conference to discuss permit specifications, occupancy, potential adverse environmental impacts, precautionary measures, contingency plans, water quality monitoring/reporting requirements, and road/bridge maintenance.

(6) Construction of access roads, drill pad, and reserve pit will commence after receipt by Operators of written notice from DFE specifying the date after which construction can start.

(7) Drilling equipment will not be moved onto the site until the EECO has inspected and determined the adequacy of the access road and provided Operator with written approval. Rig erection will not commence until the EECO has inspected the drill pad and reserve pit and provided Operator with written approval.

b. Operational:

(1) All drilling activities will be in accordance with specifications listed in Section 4 and in accordance with rules and regulations as established by the Louisiana Department of Conservation.

(2) Operator shall arrange for monitoring of water quality of the water in the reserve pit and any nearby streams that are potential receivers of discharges from the site. The EECO shall select the independent laboratory that will collect and analyze samples. Collection times and points shall be selected by the EECO. Test results shall be furnished to the Operator and the EECO.

(3) The EECO will inspect reserve pits after storm events. Unannounced inspections of the area surrounding the drill site may be conducted by the EECO. These inspections will not interfere with drilling operations.



900407

Incl 4

c. Post Operational:

(1) All pipeline, road and drill site areas will be rehabilitated after completion of operations. Revegetation and rehabilitation is the responsibility of the Operator. EECO will inspect and furnish the Operator with written approval/disapproval of rehabilitation.

(2) If a producing well were discovered, the Operator must reconstruct (if necessary) the road to permanent, maintainable standards. Roads to be closed will be reshaped, revegetated, and blocked.

(3) Operator and EECO shall meet in a "Post Operational Conference" to discuss the manner in which the operation was conducted and to consider methods of improving environmental protection during drilling operations. A release document will be signed by EECO and Operator relieving Operator of further responsibility for environmental degradation.

4. SPECIFICATIONS.

a. It will be decided before issuance of the permit if the proposed access route should become a permanent part of the Fort Polk military transportation system. If not, the road will be constructed with no permanent structures (culverts, etc.), but temporary structures will be installed where necessary to minimize erosion. However, if a producing gas or oil well is discovered, the Operator must reconstruct the road to permanent, maintainable standards. Roads to be closed will be reshaped, revegetated, and blocked according to the instructions of the EECO.

b. All permanent roads will be constructed according to specifications as may be required by DFE.

c. The Operator will not begin construction of roads and site preparation without the written approval of the DFE. The DFE will specify the date that construction can start.

(1) Bulldozer clearing of the pipeline rights-of-way and access roads will be kept to the minimum practical width.

(2) Disposal of the material removed during the clearing and grubbing operations to prepare the drill site will be accomplished prior to construction of pads and reserve pit.

(3) Clearing and soil disturbance will be held to the minimum areas required for the drilling operations.

(4) Merchantable timber cleared from the road and pipeline rights-of-way or drill sites will be disposed of as required by the DFE. Brush will be lopped and scattered. Stumps will be turned so the exposed



900408

Incl 4[3]

earth does not face the roadway. Merchantable pine timber is any sound material with a minimum diameter of 4 inches outside the bark. Merchantable hardwood is any sound material with a minimum diameter of 5 inches outside the bark.

(5) The reserve pit shall be sufficiently large to accommodate a 24-hour rainfall of 6 inches. A secondary dike shall be constructed if required by the EECO.

d. Drilling equipment will not be moved onto the site until the EECO has inspected the access road, drill pad, and reserve pit and determined that the conditions are satisfactory. Approval to move drilling equipment onto the site will be in writing from the DFE.

e. During drilling operations, the following shall be carried out:

(1) Trash pits and burning of trash is not permitted. Trash and solid waste will be taken to an approved off-site disposal area.

(2) Depending upon the characteristics of the drilling site, it may be required that the Operator cover the location with topsoil after completion of activities and prior to placement of grass cover.

(3) The Operator will contract for monitoring the water quality in the reserve pit and any nearby streams that are potential receivers of pollutant discharges. The testing laboratory and frequency of tests will be selected by the EECO. The types of tests will be pH, total suspended solids, oil/grease, chloride and barium concentrations.

(4) The Operator will establish a contingency plan that will cover unexpected events that could endanger health and environment. This plan will indciate areas of responsibility and necessary actions in the event of reserve pit breakovers, gas and oil leaks, fires, etc. Should the drilling be planned within or proximate to a residential area, the contingency plan will be approved by the Fire Prevention and Protection Division, MEDDAC and the EECO. (The EECO will coordinate staffing concurrence).

(5) The Operator's use of ORV's on pipeline rights-of-way will be monitored to determine if soil erosion and water pollution occurs. Soil erosion, water pollution or other incompatible resource damages that might result from ORV use will be controlled. Control measures, if necessary, will be by installing erosion control structures or by restricting or closing off from use those areas where such damages are occurring.

f. After drilling operations are completed:

(1) All trash and solid waste will be removed from the site.

(2) Site rehabilitation will begin.



Incl 4

(3) If the characteristics of the site require it, the stockpiled topsoil will be respread uniformly and compacted over the site as directed by the EECO. The site will be rehabilitated, seeded and/or planted, and fertilized on a schedule, and planted with seeds or plants. The work will be repeated until the site is satisfactorily revegetated and stabilized, as evidenced by written acceptance by DFE.

(4) If necessary, contour piling and/or chipping of the slash will be utilized on steep slopes to reduce the potential for erosion as the area is being revegetated.

(5) Roads will be reconstructed or reshaped as stated in paragraph 4a.

g. If oil/gas is discovered, the following shall be carried out:

(1) The Operator will be required to enter into a road maintenance agreement for those Army system roads utilized during the exploration and development of this mineral resource if the intensity of use by Operator warrants.

(2) All wellhead valves will be locked or otherwise blocked so they cannot be opened by unauthorized personnel until the well is placed on a pipeline.

(3) The right-of-way for any temporary pipeline (fuel line or water line) from a well or existing pipeline that crosses Army land must be approved by the DFE. As a minimum, this fuel line will be kept away from a traveled roadway--i.e., located at the toe of a fill slope or above the cut slope. Before laying any fuel lines, an application must be filed with the DFE indicating the path the line will follow, the specifications for pipe and fittings to be used, and the working pressure of the line.

(4) Every effort will be made to locate pipeline and access routes in existing utility and road corridors.

(5) The blowout line leading to the reserve pit that is used to burn the gas from the well or drilling fluid will be located so as not to damage vegetation outside the closed area or otherwise present a fire hazard.

(6) Pipeline trenches will be backfilled in such a manner to compensate for settling and compaction of the fill material.

(7) A right-of-way vegetative management plan will be developed by the EECO for all rights-of-way under present and future permits in cooperation with petroleum companies.



Incl 4[5]

STANDARD OPERATING PROCEDURES FOR
SEISMIC EXPLORATION

SOP No. 32X-9

1. PURPOSE. The purpose of this document is to establish procedural requirements, to assign responsibilities and to list guidelines for seismic exploration activities on Fort Polk and the Peason Ridge Training Area.

2. RESPONSIBILITIES. The Directorate of Facilities Engineering (DFAE) is responsible for carrying out the directives of this document. Specific functions are assigned to the Environmental and Energy Control Office (EECO) and the Real Property Office (RPO) of DFAE as noted. Responsibilities of the Operator (the company, corporation, or individual that is causing to be conducted or is conducting the seismic exploration) has responsibilities as delineated.

3. PROCEDURAL GUIDELINES.

a. Pre-operational:

(1) Operator shall furnish the RPO a plat identifying route, size of holes, depth of holes, size of charges, type of equipment and requested starting and finishing dates. Operator will define width of survey line and process for rehabilitation of holes/shot points.

(2) RPO will determine compatability of the survey route with existing land use and land use plans, coordinate the action and obtain command approval. RPO will determine (by coordination with G3/DPT, Range Division) those dates that ranges can be made available for the survey.

(3) EECO will:

(a) Conduct an environmental review of the survey route to evaluate the environmental impacts of Operator activities on:

-1- Ecological types of the area to be traversed.

-2- Habitats of endangered or threatened species.

-3- Historical sites.

-4- Drainage and erosion potential.

-5- Merchantable timber.

-6- Quality of water in nearby or traversed streams.

900411

Incl 5

(b) The significance of any archaeological site(s) located along the survey route shall be evaluated by the EECO in the context of the overall cultural resource management objectives of the installation. The decision to relocate because of an adverse impact on an archaeological site will be based upon this evaluation.

(c) Determine if the preparation of an Environmental Assessment or Environmental Impact Statement is necessary.

(d) Coordinate planned survey operations with the U.S. Forest Service when it is appropriate.

(4) Should a permit be granted to survey on the proposed route the Operator and representatives of the RPO and EECO shall meet in a "Pre-Operational Conference to discuss permit specifications, potential adverse environmental impacts, precautionary measures, contingency plans and water quality monitoring/reporting requirements.

(5) Seismic survey activity will commence after receipt by Operator of written notice from DFAE specifying the date after which the survey can start.

b. Operational:

(1) All drilling activities will be in accordance with specifications, rules and regulations as established by the Louisiana Department of Conservation.

(2) All field activities will be conducted in accordance with the SPECIFICATIONS described in this SOP (Section 4d).

(3) Unannounced inspections of the operation may be conducted by the EECO; these inspections will not normally interfere with survey operations unless habitat of an endangered species or historical/archaeological site has been/will be disturbed as a result of survey activities.

c. Post Operational:

(1) Within 15 days after completion of the exploration project, the Operator will furnish the RPO a certified plat showing the location including hole elevations, hole logs and exact number of shot/point locations utilized. The permittee shall be responsible for damages to Government property and damages to property of Government-authorized surface users.

(2) Within 30 days after the completion of the exploration project, the Operator, EECO and RPO shall meet in a "Post Operational Conference" to discuss the manner in which the operation was conducted and to consider methods of improving environmental protection during survey operations. A release document will be signed by EECO, RPO and Operator relieving Operator of further responsibility for environmental degradation.



900412

Incl 5

4. SPECIFICATIONS.

a. If the EECO determines that an Environmental Assessment or an Environmental Impact Statement will be required, the Operator will prepare this assessment or cause this assessment to be prepared.

b. If the EECO determines that an archaeological investigation is necessary, the Operator will cause this investigation to be carried out by a professional archaeologist acceptable to the EECO.

c. The Operator will not begin survey activities and site preparation without the written approval of the DFAE. The DFAE will specify the date that operations can start.

d. The Operator shall carry out field activities in accordance with the following:

(1) Appoint and maintain, at all times during field operations that involve Fort Polk lands, a local agent upon whom may be served written orders or notices. If a substitute agent is appointed, the Operator shall immediately inform the DFAE. Designation shall be in writing, and the agent shall have full authority to act for the Operator. During field operations, the Operator shall appoint, in writing, a competent engineer to inspect and supervise field operations to ensure compliance with specifications.

(2) All exploration work will be done during dry soil periods and will no additional road construction, unless site specific approval has been obtained from the DFAE.

(3) Whenever possible, the Operator will drive over natural ground. If earthwork is necessary to obtain access, approval of DFAE must be obtained prior to such activity.

(4) Bulldozer clearing of the survey route is not allowed. All clearing will be done by hand.

(5) Clearing and soil disturbance will be held to the minimum areas required for survey activities.

(6) Merchantable timber shall not be damaged or cleared from the route.

(7) Brush will be lopped and scattered.

(8) Shot holes will be plugged to a depth of 30 inches.

(9) Ground flagging will be removed.

(10) All solid waste (food wastes, wrappers, cans) will be collected, bagged and disposed of off-post.



Incl 5

(11) No open fire will be permitted; strict fire control measures apply.

(12) Repair all damage, other than ordinary wear and tear, to roads and trails.

(13) All drill cuttings on the ground surface must be spread to no more than one inch thickness.

(14) During any field activities, the Operator shall protect and preserve all land survey monuments. Records of found corners and monuments shall be given to the DFAE.

5. PERMIT CONDITIONS.

a. The land being made available for exploration is located inside the boundaries of the Fort Polk Military Reservation, which is located in Vernon Parish, State of Louisiana. The Army may make the surface available on Army-owned land and, under provisions of a Memorandum of Understanding, assist the USFS in making the surface of the USFS land available for exploration.

b. Land within the impact areas of the firing range complex at Fort Polk is periodically swept for surface decontamination from explosives/ordnance. Although the land is outside the contaminated impact area for the ranges, no guarantee can be made that sub-surface unexploded ordnance may be encountered, since the overall area has been used for firing live ordnance since World War II commenced in the early 1940's.

c. The conditions of this procedure are completely set forth herein, and none of its terms can be varied or modified, except in writing by the DFAE.



Incl 5+

900414

# REPORT OF AVAILABILITY
# FOR
# OIL AND GASE LEASE OFFERS

In accordance with the references listed below, the following information is provided:

a. Reference:

(1) Ltr, HQDA, DAEN-REM-C, 21 Feb 78, subj: Mineral Leasing on Acquired Land of the United States Set Apart for Military or Naval Purposes.

(2) Section 12(a) of the Federal Coal Leasing Amendments Act of 1975, approved 4 Aug 76, (Public Law 94-377, 96 Stat 1090).

(3) AR 405-80, Granting Use of Real Estate, 1 Feb 79.

(4) Environmental Impact Assessment, Granting of Mineral Leases to Amoco Production Company and Texas Oil and Gas Corporation, 14 Aug 79, at Incl 6.

b. Identification of land included in this report. (Composite map at Incl 8.)

(1) All land is located in the State of Louisiana, Vernon Parish, Louisiana Meridian.

(2) The ownership of Ft Polk is divided between the Army and Dept of Agriculture.

(3) The mineral ownership is unknown since the majority of the land was acquired without minerals. Mineral moratorium was paid on portions of the land since the 1940's and was terminated in March 1978.

c. Safety (Para 4-1b, AR 405-80):

(1) Portions of this land is physically located within the boundaries of the Ft Polk Military Reservation and is identified in paragraph b of this report. The land identified in this lease package is eing used for training purposes. Portions of the land is contaminated.

d. Description (Para 4-1d thru 4-1g, AR 405-80):

(1) Portions of land being made available is located inside the boundaries of the Ft Polk Military Reservation (map at Incl 8) which is located in Vernon Parish, State of Louisiana. The tracts are also identified in offers to lease No's ES 20969, 20971, 20972; 22704; ES 20318: ES 27633; ES 27694 - 27697 at Incl 1.

(2) There is no known proposed destruction, relocation, or replacement of US Army facilities required as a condition to the use of the land.

(3) The land is not being made available for public roads.

Incl 2

(4) The land is under exclusive jurisdiction of the United States and retrocession is not intended by this action.

(5) The availability of the land is necessary for satisfying an offer to lease for oil and gas under provisions of Public Law 94-337, 96 Stat, 1090.

(6) Disposal of the land is not applicable since it constitutes a major portion of the land Ft Polk uses for military training.

(7) Generic Environmental Evaluation is attached at Incl 3.

(8) The future revocation of this easement would not be embarrassing to the Department of the Army.

(9) The activity will not jeopardize the habitat of any endangered or threatened species of fish, wildlife or plants IAW operational procedures established for control of the same.

(10) The affected property has not been identified in the National Register of Historic Places.

e. Recommendations:

(1) That the portion of land described in oil and gas lease offers listed in paragraph d(1) of this report and identified as Army owned on map at Incl 8 be made available upon confirmation of US Government ownership of oil and gas minerals.

(2) That the lease offers in this action which apply to minerals under land owned by the US Forest Service be coordinated with the US Forest Service.

(3) That Ft Worth District Corps of Engineers verify ownership of oil and gas rights covered in this action.

(4) That the effective date of availability be immediate, with the Ft Polk Commander reserving the right to approve dates of entry; route on ingress and egress; and the numbers and locations of exploratory oil and gas wells.

(5) That the United States District Court for the Western District of Louisiana, Shreveport Division and Lake Charles Division approved stipulations for other mineral owners on Peason Artillery Range, copy at Incl 7, apply to any successful leasee under this offer.

(6) No occupancy or other surface disturbance will be allowed within 2500 feet of residences, other structures, sites of or planned structures. This distance may be modified when specifically approved in writing by the Ft Worth District Corps of Engineers.

(7) That the Standard Operating Procedures for exploratory and Field Development Drilling of Oil and Gas Wells, numbered SOP No. 32X-2 at Incl 4 apply to any successful leasee under this offer.