IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CENTRAL PINES LAND COMPANY, )
ET AL )
)
Plaintiffs )
)
vs. ) No. 98-314 L
)
THE UNITED STATES OF AMERICA, ) Hon. Edward J. Damich
)
Defendant )

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

ORAL DEPOSITION OF

DAVID VERNON HAMILTON

JULY 19, 2006

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

ORAL DEPOSITION OF DAVID VERNON HAMILTON, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 19th day of July, 2006, from 1:19 p.m. to 3:00 p.m., before Linda S. Partida, CSR, in and for the State of Texas, reported by computerized stenotype machine at the offices of the United States Attorney, 910 Travis Street, 15th Floor, Houston, Texas, pursuant to the Federal Rules of Civil Procedure (and the provisions stated on the record or attached therein.)

NMA COPY

Q. And these wells drilled -- shown on this map would suggest that the fairway -- and, again, I will give you an opportunity in a moment to elaborate on this. But based on the drilling history as identified on this map suggests that the fairway is south of Fort Polk; is that right?

A. The map suggests that, yes.

Q. Okay. Do you disagree with that?

A. Yes.

Q. Why?

A. Because I know for a fact that we wanted to drill wells on Fort Polk.

Q. Okay. But I'm asking you how the -- how the Austin Chalk trend played out.

And when we look at the map, we see that there were -- there were not wells drilled here on the fort or there weren't very many wells drilled --

A. Uh-huh.

Q. -- east or west of the fort but there were a number of -- of wells, a number of successful wells, drilled south of the fort.

A. Uh-huh.

Q. Is it not the case that the trend played out so that the fairway was south of the fort?

A. You -- is it not what? I'm sorry. Your choice of --

Q. Okay.

A. -- words is -- is --

Q. I know.

A. You know, I'm -- I'm operating off of information and --

Q. Okay.

A. The trend went from -- it was not due east-west. It was more northwest-southeast, which suggests, yes, there were wells drilled up here. But I just know that the trend, at some point in time, and -- went across Fort Polk.

Q. And how do you know that?

A. Because the maps that the geologist had furnished me to -- on where to buy acreage and where they wanted to drill.

Q. Uh-huh.

And why weren't there wells drilled on the fort?

A. I believe that well -- wells weren't drilled on the fort because of the -- the -- what's the right word -- the -- the restrictions of access and the restrictions of use of the surface and the many, many things that we would have to comply with

on trying to get in there and drill wells. There -- and the safety factors. There was lots -- you know, depending on where you're talking about. You know, I know the war games area was an area that, personally, when I heard what we were going to have to do and the things involved and the, quote, unexploded mustard gas canisters and whatever else is out there, that -- it was a quote from some of the people at Fort Polk that this was a very restrictive area with war games areas in there.

So, I know, personally, I didn't want to be out there; but that wasn't my call.

Q. Okay.

But looking at this map --

A. Uh-huh.

Q. -- the areas to the east of the -- the fort, that's not --

A. Yeah.

Q. -- that's not the fort?

A. That's right.

Q. And there are no wells drilled there?

A. That's right.

Well, I guess those -- I guess this map is accurate as far as the wells total, all Austin Chalk wells drilled. But, yes, that's correct if the

Q. (BY MR. GRAY) Would you like to answer the question now, Mr. Hamilton?

A. I can --

MR. KRIEGSMAN: Objection. Outside --

A. -- tell you that, if there -- if it was the war games area, yes, it was a deterrent in drilling in that area.

Q. Mr. Hamilton, I'm going to show you what purports to be a -- a hydrocarbon lease dated effective date of July 1, 1996. I'm going to ask you if you can identify that lease.

A. It's a hydrocarbon lease dated July 1st, 1996, between Central Pines Land Company, Tower Minerals Company, and Sonat Exploration Company.

Q. But would you look at the lease and tell me if you recognize the document?

A. Yes, I remember this document.

Q. Is -- is that -- did you participate in the -- in the negotiation of that document?

A. Yes, I did.

Q. Would you look at the property description there?

MR. KRIEGSMAN: Could we just mark that, please?

MR. GRAY: All right. Let's mark this

acquired in -- in this area?
A. I -- I don't do -- I'm not sure which paragraph you're referring to.
Q. Well, aren't -- aren't these the -- we'll go to the -- to the lease here.
Aren't these the -- aren't these the -- the government leases, the Sonat leases?
A. Yes.
Q. Right. Does that refresh your memory now?
A. Yes. I don't si -- specifically remember 2 and a half percent; but I remember something along those lines, that --
Q. All right.
A. -- that there was an overriding royalty.
Q. And, of course, Sonat was willing to pay the 25 percent royalty and the -- and the 2 and a half percent override on the other acreages as part of the acquisition of these leases?
A. That's -- that's correct.
Q. Now, what I'd like to show you is a series of correspondence concerning Tract C; and I'd like to start with a letter dated April 24, 1996.
MR. GRAY: Now, you've seen this, of course, Alex; but if you want to look at it.
MR. KRIEGSMAN: Thank you.

Okay. If we could mark that, please.

*MR. GRAY:* Yeah. Let's -- I'll tell you. What -- has this -- has the lease been marked, yet?

*MR. KRIEGSMAN:* Yes.

*MR. GRAY:* As Exhibit 2.

Then, Madame Linda, let's mark the April -- what is that, April the 24th?

*THE WITNESS:* Yes, sir.

*MR. GRAY:* -- 1996, letter as Hamilton Deposition Exhibit No. 3.

And while you're marking, if you like, you can go ahead and mark 4 and 5.

*(Exhibits 3 through 5 marked)*

*MR. KRIEGSMAN:* Here you go, in chronological order.

*Q.* *(BY MR. GRAY)* Mr. Hampton, do you recognize that letter?

*A.* Well, I believe I do, yes, sir.

*Q.* Would you describe for the record that letter?

*A.* Just real quickly, I'll (reading)...

Yeah. It's a lease proposal covering lands in Tract C. Yes, sir.

*Q.* Would you look at the property descriptions

A. It's a counteroffer to the Sonat offer that I submitted to the Lawtons with some counteroffer terms.

It looks like -- it appears to be more acreage, for some reason. The number of acres is more. It could have been because I didn't have the right number of acres the first section or something.

Q. Well, let's deal with it.

Your offer dealt with how many acres, sir?

A. 8,271.58.

Q. And how many acres is in the Lawton counterproposal, which is the May 1 letter?

A. 9,798.44.

Q. Now, I'm going to show you yet another letter now. It's Hamilton Deposition Exhibit No. 5. I'm going to ask you if you -- if you recognize that letter.

A. Yes, sir. It is --

Q. What is it, sir?

A. Well, it's a counter to your -- to the Lawtons' counteroffer whereby, instead of two fifty an acre, we're offering $200 an acre. And looks like we omitted the overriding royalty or that 2 and a half percent override as presented under the Lawton

*MR. GRAY:* It's dialogue?

*MR. KRIEGSMAN:* -- you're giving him information, statements, testifying.

*Q.* *(BY MR. GRAY)* Was this lease concluded, to your knowledge?

*A.* No, sir.

*Q.* Okay.

Now, let's look at the -- is it Hamilton -- and that's not Hamilton. It's called Hochstein Exhibit 2.

*MR. GRAY:* Madame Court Reporter, I'd like to go ahead and mark it also Hamilton Deposition Exhibit 6 so that we're satisfied that this is the same one that we're talking about here.

*(Exhibit 6 marked)*

*MR. KRIEGSMAN:* Well, we don't need to make two cop -- extra copies of this, do we?

*MR. GRAY:* I want it identified. I want it marked.

*MR. KRIEGSMAN:* Okay. I'm just -- but for -- for your own understanding, we only need to make one copy of this, madame.

*THE REPORTER:* Right. Y'all don't need copies on your copies. You just need copies on the originals so that, when they're filed, it has a

STATE OF TEXAS
COUNTY OF HARRIS

**REPORTER'S CERTIFICATE**

**ORAL DEPOSITION OF DAVID VERNON HAMILTON**

**JULY 19, 2006**

I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the facts stated in the foregoing pages are true and correct.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 3RD day of August, 2006.

Linda S. Partida

Linda S. Partida, CSR, RPR
Texas CSR 2413
Expiration: 12/31/07
Nell McCallum & Associates, Inc.
Firm Registration No. 243
5300 Memorial Dr., Suite 600
Houston, Texas 77007
713-861-0665