UNITED STATES COURT OF FEDERAL CLAIMS

COPY

CENTRAL PINES LAND COMPANY, ET AL., )
)
)
Plaintiffs, )
)
vs. ) NO. 98-314 L
)
)
THE UNITED STATES, )
)
Defendant. )

DEPOSITION OF HENRY HOOD

TAKEN ON BEHALF OF THE DEFENDANT

IN OKLAHOMA CITY, OKLAHOMA

ON JULY 18, 2006

REPORTED BY: ELIZABETH CAUDILL, CSR, RMR, CRR

D&R

REPORTING & VIDEO, INC.

ROBINSON RENAISSANCE
119 N. Robinson, Suite 650
Oklahoma City, Oklahoma 73102
405-235-4106

MID-CONTINENT TOWER
401 South Boston, Suite 310
Tulsa, Oklahoma 74103
918-599-0507

depo@drreporting.com

Q What is Chesapeake?

A Chesapeake is a public company -- Chesapeake Energy Corporation is a public company listed on the New York Stock Exchange that is predominantly in the business of drilling and producing for natural gas in the United States.

Q And what was your position when you joined Chesapeake in '95?

A I came on as the vice-president land and legal.

Q And could you walk me through from '95 up and to the present what your different titles were, the time frame and what your duties were at each of those?

A Title remained the same until I believe about maybe two years ago I was promoted to senior vice-president land and legal. Job description did not change.

Oh, and then most recently, I think in the last six months, I received the added title of general counsel. Again, no effective change in duties.

Q Okay.

A And probably five years ago, in addition to the land and legal functions, I took

Q What do you know about attempts by Chesapeake or the Lawtons to obtain access to Fort Polk or the Group C lands?

A I know nothing about the Lawtons' attempt to get access. I do recall at some point, after we had acquired a lease from Central Pines -- and I am assuming it covered the Group C lands. This map does look familiar now, among others, potentially -- I do recall that we either attempted to get a lease from the mines or the BLM, the mines and mineral division, and we may, in fact, have gotten one. I don't even recall.

But we wanted a protection lease so that if we drilled on the subject lands, we would have title protection, because I do believe at that point there was a title dispute.

Whether we ever got that lease or whether we felt secure in drilling without it, I don't recall.

But as far as access to the fort, I do remember some discussions about some problems that there might be with regard to access because it was an active military installation.

Q You say you remember discussions concerning problems. Could you elaborate on

leases from the Lawton group. I think this probably was the last lease that we acquired. I don't --

Q When you say this was the last lease that --

A It's the last one I recall.

Q Okay. Which lease would that be?

A The Central Pines lease, the one that covered lands on Fort Polk.

Q Okay.

A There was at least one other lease that we drilled quite a few wells on, and this lease may have had wells. This area right here outside of the fort, I believe we drilled that.

Q Right outside the fort?

A Yes, right here. That looks familiar to me.

Q This is Exhibit 4 in the Denny deposition, and these areas -- just put it down so counsel can see it -- marked in blue and yellow have been identified as -- it's identified on the map as the Chesapeake lease.

Is that the lease that you're referring to?

A This is a different lease than all this

clause that existed in the prior lease, provided for the waiver of that clause to effect this transaction and the potential protection lease with the USA, and that to assure us that the Lawtons were not going to oppose the proposed lease sale by the USA scheduled, I guess, a month or so after this, and that they were going to advise the USA attorney of that.

Q Was that letter something, then, that you had requested?

A Yes, it was.

Q And as you look at it now, does it refresh your memory that that was part of the conditions of Chesapeake acquiring the lease which has been identified as Denny Deposition Exhibit Number 3?

A Yes, sir, although this is Hood Deposition Exhibit Number 3.

Q No, sir. I asked you if it was consistent with Chesapeake acquiring the lease identified as Denny Deposition Number 3.

A Oh, yes, sir. That is correct. That is correct.

Q I'd like to show you another letter. Same situation, so I'll hand it to Mr. Kriesgman.

MR. KRIEGSMAN: Was this included in the packet?

MR. GRAY: It is.

MR. KRIEGSMAN: Okay. We've got it here. Thanks.

Q (By Mr. Gray) I'll show you the letter. What is the date of the letter I just handed you, sir?

A February 7th, 1997.

Q And does it purport to be a letter by you?

A Yes.

Q What do you understand the purpose of that letter was, sir?

A This was to advise Mr. Minaldi and you, Mr. Gray, of the impending lease sale to cover the -- the protection lease that we had asked to be put up for bid which I guess has been stricken a couple of times previous which is why I, in the back of my mind, wasn't sure whether we actually got the lease. Now I recall there were some delays associated with getting that put up for bid.

Q Let's do a couple of things here. Let's mark that one. I think my next number is

was Hood Deposition Exhibit Number 6.

Other than the addressee, Mr. Hood, the letter appears to be for the same purpose, do they not?

A Yes, although one is several days later. But they do relate to the same scheduled lease sale, yes.

Q They both speak for themselves with regard to that scheduled lease sale?

A That is correct.

Q Now, as we speak here now, do these documents refresh your memory as to whether Chesapeake actually acquired a protective lease from the United States to the extent of the property covered by the Denny Deposition Exhibit Number 3?

A It refreshes my memory that we had delays getting one. Now I remember that we were nervous that Sonat might get the lease or Union Pacific and that would make it impossible to develop.

We wanted very much for potential bidders to know there was a title dispute so that we would be assured of getting the lease since we had the other side of the issue.

And I don't recall being disappointed, so we must have either gotten the lease or the lease never was put up for bid. But I can't recall beyond what you've shown me so far.

Q You don't --

A But I know that the lease was not taken by somebody else. I would have been very upset if that was the case, and I'm not upset right now, so that didn't happen.

But whether we were ultimately able to get that lease bought or whether it was continued yet again, I don't recall.

Q But with regard to a protective lease from the United States which would be pursuant to public bidding, then you had the risk that a competitor could acquire the lease?

A That's correct.

Q And in this particular case, the competitors there, would you identify them again?

A Sonat Exploration was one that had acreage nearby and actually had leased some of the Lawton lands previously, and Union Pacific Resources.

Q And is it your thought that if your competitors had acquired what you consider the

# C E R T I F I C A T E

STATE OF OKLAHOMA )
) SS:
COUNTY OF OKLAHOMA )

I, ELIZABETH CAUDILL, CSR in and for the State of Oklahoma, certify that HENRY HOOD was by me sworn to testify the truth; that the above and foregoing deposition was taken by me in stenotype and thereafter transcribed and is a true and correct transcript of the testimony of the witness; that the deposition was taken on JULY 18, 2006 at 10:33 a.m. in Oklahoma City, Oklahoma; that I am not an attorney for or a relative of either party, or otherwise interested in this action.

Witness my hand and seal of office on this 26th day of July, 2006.

ELIZABETH CAUDILL, CSR, RMR, CRR
CSR No. 161