# EXHIBIT P

RE Files

# DISPOSITION FORM

For use of this form, see AR 340-15, the proponent agency is TAGCEN.

| REFERENCE OR OFFICE SYMBOL | SUBJECT |
|---|---|
| SWFRE-A | Trip Report - Fort Polk |

XXx THRU Ch, RE Div — FROM Ch, Acq Br — DATE 12 July 77 — CMT 1

TO RE Files — Mr. Wilder/db/2111

1. On Friday, June 29th, I went to Fort Polk for purpose of accompanying Mr. John Camp, Executive Director of Burton Industries of Fort Polk, to show him Fort Polk's growth and current mission.

2. Several years ago, Mr. Camp visited the then Commanding General and felt he did not receive a warm or friendly reception, considering the fact he controlled approximately 44,000 mineral acres at Fort Polk Artillery Range. Mr. Camp informed me of this fact, which information was relayed to Major General Steele during my visit to Fort Polk on 18 May 1977. MG Steele directed me to extend an invitation to Mr. Camp and assured me Mr. Camp would be treated with the respect and dignity to which a person in his station-in-life is entitled.

3. I extended the invitation and set the date. Mr. Camp and his wife came at the selected time and date. He was received and treated royally by MG Steele, his wife and his staff. Mr. Camp and his wife were given two briefings, a helicopter view of Fort Polk, and lunch with MG Steele and his staff.

4. Mr. Camp's visit to Fort Polk did establish a friendly and cooperative attitude which may be very valuable to me while negotiating for an agreement or settlement of the mineral moritorium which, if not extended, will expire on 30 March 1978. MG Steele and Mr. Camp each promised to be reasonable in exercising their respective rights with one another.

5. At the conclusion of his visit, Mr. Camp asked for permission now to commence seismograph work on Leesville Artillery over mineral acres he owned or controlled. Permission was denied. Fort Polk will permit seismograph after the mineral moritorium expires on 30 March 1978 provided the work is done on weekends or when the artillery range is not being used. No one will be permitted on the installation to perform seismograph work unless he has a request signed by mineral owner. Fort Polk will furnish Mr. Camp a schedule of when use of the range is being utilized so seismograph work crews can be scheduled.

6. Mr. Camp asked what if his oil and gas lessee wants to drill after 30 March 1978? He was told the question was premature. First, it will take the oil and gas lessee 6-9 months time for seismographing the artillery range and analyzing results at a substantial expense. If as the result of this study, it may well be that no oil and gas lessee would be willing to spend 2-3 million dollars on a wildcat well. The area surrounding Fort Polk has been drilled several times, and no oil and gas found.

7. Will Fort Polk permit just any oil and gas lessee on the artillery range? No, Fort Polk should insist on a dependable and reliable major oil companies because of the

W.S./Army/0075

DA FORM 1 FEB 61 2496 — REPLACES DD FORM 96, WHICH IS OBSOLETE.

☆ U.S. GPO 1976-0-765-037/35

EX 26

SWFRE-A
Subject: Trip Report - Fort Polk

12 July 1977

risk and danger involved. They will be required to post a large liability bond, comply with environmental laws and regulations, and restore property after completion of drilling operations etc. Mr. Camp agrees and will likely use Conoco or ARCO.

8. What if oil and gas lessee decides to drill, may they select the location site? Fort Polk should not grant permission if it materially interferes with their military mission.

9. Will drilling be permitted in the impact area? No major oil company would likely accept risk of drilling in the impact areas which covers an area of about 24 sections (4X6). LTC Maio, Department of DPT does not believe this area can be deduded of old unexploded artillery shells which go to a depth of 18 feet. LTC Maio expressed the opinion to Mr. Camp as we flew over the artillery range that there are certain areas on the south, north, and lesser amounts on each side of artillery range which might be drilled with little or no interference with the military mission.

10. What of other locations within the artillery range? Maybe, each requested location will be reviewed and where and if possible MG Steele will try to cooperate. MG Steele assured Mr. Camp that he was interested in improving public relation not only with oil companies during current energy crisis but with the local community. The modern Army does care and depend on the support of all people living around its camps, posts and stations.

11. Mr. Camp's visit to MG Steele was a success. It did open communications and should go a long way in building mutual trust and confidence. Each one now knows the other one's problems and expressed a sincere desire to cooperate with one-another. Reasonableness seems to be the key in exercising each others respective legal right, power or authority.

12. The problem has not been solved; i e: Oil exploration vs integrity of Fort Polk Artillery Range. MG Steele expects Fort Worth District to conduct all negotiations, be the mediator, and utlimately solve the problem. If they never drill or if dry well is drilled, we have no problem. If oil or gas is discovered, each will have "to live" with one-another.

Darwin L Wilder
DARWIN L. WILDER
Chief, Acquisition Branch
Real Estate Division

W.S./Army/0076