# In the United States Court of Federal Claims

### No. 98-314L
### (Filed: September 7, 2011)

```
* * * * * * * * * * * * * * * * * * * * *   *
                                            *
CENTRAL PINES LAND                          *
COMPANY, et al.,                            *   RCFC 12(b)(1) after Trial; 28 U.S.C.
                                            *   § 1500; United States v. Tohono
              Plaintiffs,                   *   O'Odham Nation, 131 S.Ct. 1723
                                            *   (2011); Substantial Overlap in
v.                                          *   Operative Facts; Supplemental
                                            *   Complaint May Not Establish
THE UNITED STATES,                          *   Jurisdiction Where Barred
                                            *
              Defendant.                     *
                                            *
* * * * * * * * * * * * * * * * * * * * *   *
```

*A. J. Gray, III*, Lake Charles, LA, for plaintiffs.

   *Kristine S. Tardiff,* United States Department of Justice, Concord, NH, with whom was *Ignacia S. Moreno,* Assistant Attorney General, for defendant. *Julie S. Thrower*, United States Department of Justice, Washington, DC, *Dennis Daugherty* and *Wendy Dorman*, United States Department of the Interior, Washington, DC and *Lt. Col. Scott Walter*, United States Army, Arlington, VA, of counsel.

**O P I N I O N**

**FIRESTONE**, *Judge*.

   Pending before the court in this case involving the plaintiffs' claims of a Fifth

Amendment taking without just compensation is the government's motion to dismiss for

lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims

("RCFC").  The court has previously issued a number of opinions in this case on motions

for summary judgment; following trial on liability and damages, the court issued an

opinion awarding the plaintiffs $1,667,042.86 plus interest, representing the fair market value of the government's temporary taking of portions of the plaintiffs' mineral interests. In the course of the parties' briefing on the plaintiffs' motion for attorney's fees and costs, the Supreme Court entered its decision in United States v. Tohono O'Odham Nation, 131 S.Ct. 1723 (2011), regarding the limit placed on the jurisdiction of the Court of Federal Claims ("CFC") by 28 U.S.C. § 1500 ("section 1500").[1]  The Supreme Court held:

> The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents.
> . . . .
> . . . Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.

Tohono, 131 S.Ct. at 1727, 1731.  Based on this decision, the government filed the subject motion to dismiss for lack of subject matter jurisdiction.  In its motion, the government argues that this case must be dismissed under section 1500 because this suit is "for or in respect to the same claim" as that which the plaintiffs had pending in the

---

[1]That statute provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

District Court for the Western District of Louisiana at the time the plaintiffs filed this

CFC suit.  For the reasons that follow, the government's motion to dismiss is

**GRANTED**.

## I.    BACKGROUND

The facts of this case have been recited numerous times in the multiple opinions

this court has issued since the case was filed in 1998.  The case involves a taking of a

mineral servitude underlying land owned by the United States and occupied by Fort Polk

and the Kisatchie National Forest in Vernon Parish, Louisiana.  The court described the

relevant procedural history in its opinion following trial as follows:

> The plaintiffs filed a quiet title suit with regard to their mineral rights in the
> Western District of Louisiana on August 22, 1996.  The decisions of that court
> clarifying the nature and ownership of the mineral servitude may be found at
> Central Pines Land Co. v. United States, No. 2:96-2000 (W.D. La. Apr. 7,
> 1999) ("Central Pines I"), aff'd, 274 F.3d 881 (5th Cir. 2001) ("Central Pines
> II").  In those cases, the Fifth Circuit affirmed that trial court's conclusion that
> the plaintiffs retained mineral interests in only the lands designated as Group
> C.   The plaintiffs' interests in Groups A and B had prescribed to the
> government because of non-use under Louisiana law.
>
> The plaintiffs filed the present case on April 4, 1998, alleging a taking
> of their mineral interests.  The case was stayed pending resolution of the quiet
> title dispute.

Central Pines Land Co. v. United States, 95 Fed. Cl. 633, 635 n.1 (2010) ("Central Pines

V").  After the Fifth Circuit affirmed the district court's quiet title ruling and the Supreme

Court denied the plaintiffs' petition for certiorari, Central Pines Land Co. v. United

States, 537 U.S. 822 (2002), the plaintiffs filed their "First Amended and Restated

Complaint" in this court on January 6, 2003, indicating that the quiet title dispute had

been resolved and was no longer pending.  Am. Compl. ¶ 2.  Following the filing of this

"Amended" complaint, a number of intermediate decisions narrowed the issues for trial:

> In Central Pines Land Co. v. United States, 61 Fed. Cl. 527 (2004) ("Central
> Pines III"), Judge Yock dismissed claims based on mineral interests that had
> been determined to be owned by the government rather than the plaintiffs in
> the quiet title action.  Judge Yock also determined that certain claims were
> barred by the statute of limitations.  The case was transferred to Judge Damich,
> who in Central Pines Land Co. v. United States, No. 98-314 (Fed. Cl. Sept. 30,
> 2008) ("Central Pines IV"), held that the government's mere assertion of title
> with regard to the Group C lands was not enough to effect a taking and held
> that the plaintiffs must show that the government did "something more" in
> order to establish a taking.  Central Pines IV, slip[] op. at 17.  He determined
> that there were disputed facts as to whether the government's leasing activities
> with regard to the Group C minerals constituted "something more."  The court
> also held that genuine issues of material fact existed as to whether military use
> and surface contamination frustrated the plaintiffs' leasing opportunities and
> constituted a taking of the plaintiffs' entire Group C mineral interests–not just
> the leased minerals.  However, the court granted summary judgment to the
> government with respect to the plaintiffs' claims that the government had
> taken their property rights by denying potential lessees protective leases,
> denying access to the surface, or instituting a de facto moratorium on mineral
> exploration, holding that there was no evidence of final agency action and the
> claims were largely based on contingent future harms.  The court further held
> that no specific facts had been alleged regarding the plaintiffs' claim that the
> government had unlawfully subordinated the plaintiffs' interest in mineral
> exploration and development to the government's military mission.
> The case was transferred to [Judge Firestone] for trial.

Central Pines V, 95 Fed. Cl. at 635 n.1.  After trial, the court held that the plaintiffs were

entitled to compensation for a temporary taking of certain mineral interests:

> [T]he government's leasing of plaintiffs' mineral interests deprived the
> plaintiffs of the benefit they otherwise would have received from a potential
> lessee during that period.  That government action effected a temporary taking
> of the mineral interests leased for the period they were leased, for which the
> plaintiffs are entitled to just compensation.

Id. at 652 (footnote omitted).  The court calculated that just compensation for the government's taking amounted to $1,667,042.86 plus interest.  Id. at 654.  The court did not calculate attorneys' fees and costs.

As noted, while the court was considering the plaintiffs' claim for attorneys' fees and costs, the Supreme Court issued its opinion in Tohono and the government moved to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction based on the application of section 1500, arguing that because the plaintiffs' district court case was pending at the time the plaintiffs filed their initial complaint in this court involving the same claim, this court never possessed jurisdiction over the plaintiffs' taking claims.

## II.   DISCUSSION

### A.     Standard of Review

The standard for ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is well-settled.  The plaintiff bears the burden of establishing subject matter jurisdiction, Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  Because jurisdiction is a threshold matter, a case can proceed no further if a court lacks jurisdiction to hear it.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." (citation

omitted)); <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83 (1998).  <u>See generally</u>

<u>John R. Sand & Gravel v. United States</u>, 552 U.S. 130 (2008), <u>aff'g</u> 457 F.3d 1345.

Challenges to this court's jurisdiction may be raised at any time and may not be waived

by the government.  <u>See generally</u> <u>id.</u>

When a party has moved to dismiss for lack of subject matter jurisdiction, the

alleged facts in the complaint are viewed as true.  <u>Pixton v. B & B Plastics, Inc.</u>, 291 F.3d

1324, 1326 (Fed. Cir. 2002) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)); <u>see</u> <u>N.</u>

<u>Hartland, L.L.C. v. United States</u>, 309 F. App'x 389, 392 (Fed. Cir. 2009) (the court

"takes the allegations in the pleadings as true and construes them in the light most

favorable to the complainant").  Additionally, when a court considers such a motion to

dismiss, it may look beyond the pleadings and "inquire into jurisdictional facts" to

determine whether jurisdiction exists.  <u>Rocovich v. United States</u>, 933 F.2d 991, 993

(Fed. Cir. 1991).

> **B.** **Based upon Recent Supreme Court Precedent, Jurisdiction over the Original CFC Complaint Is Precluded Because of the Substantial Overlap in Operative Facts.**
>
> **1.** **The <u>Tohono</u> decision clarified the test for identity of claims under 28 U.S.C. § 1500.**

As noted above, the government's motion to dismiss the plaintiffs' complaint is

based primarily on <u>Tohono</u>, the recent Supreme Court case interpreting section 1500.

Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any

claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

The plaintiff in Tohono filed an action in a United States district court against federal officials alleging a breach of fiduciary duty with respect to the management of tribal assets held in trust by the government.  In its district court case, the plaintiff sought equitable relief, including an accounting of trust property.  The day after filing its complaint in district court, the plaintiff filed a complaint in the Court of Federal Claims, alleging nearly identical breaches of fiduciary duties based upon the same tribal assets and sources of fiduciary duty, but seeking money damages.  The CFC dismissed the case based on section 1500, holding that "Section 1500 divests this court of jurisdiction over plaintiff's claim because it arises from the same operative facts and seeks the same relief as the claim in district court."  Tohono O'Odham Nation v. United States, 79 Fed. Cl. 645, 659 (2007).  The Federal Circuit reversed based on Circuit precedent, holding that section 1500 is only applicable if two claims both "arise from the same operative facts" and "seek the same relief."  Tohono O'Odham Nation v. United States, 559 F.3d 1284, 1288 (Fed. Cir. 2009) (quoting Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc)).  The Circuit found that the relief sought in the CFC action was different from that sought in the district court, and thus section 1500 did not

divest the Court of Federal Claims of jurisdiction over the subject complaint.

The Supreme Court reversed the Federal Circuit, holding that the relief sought in two complaints is superfluous to the question of whether two suits are "for or in respect to" the same claim within the meaning of section 1500.  The Supreme Court in Tohono explained regarding this statute, "The rule is more straightforward than its complex wording suggests.  The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." Tohono, 131 S.Ct. at 1727.  The Court went on to state that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." Id. at 1731 (emphasis added).  The Court held that the statute's use of the phrase "in respect to" "does not resolve all doubt as to the scope of the jurisdictional bar, but 'it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity.'" Id. at 1728 (quoting Keene Corp. v. United States, 508 U.S. 200, 213 (1993)).  "It suggests a broad prohibition, regardless of whether 'claim' carries a special or limited meaning." Id.  The Court concluded, as the Court of Federal Claims had, that the plaintiff's two suits had "substantial overlap in operative facts" based upon the identity of the trust assets at issue and the alleged breaches of fiduciary duty.  The Court noted, "Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect."

-8-

Id. at 1731.  Thus, the Court held, the Court of Federal Claims possessed no jurisdiction

over the claim until the district court case was either dismissed or "complet[e]" and that

after that time, the plaintiff would be "free to file suit again in the CFC if the statute of

limitations is no bar."[2]  Id.

In its motion to dismiss the plaintiffs' case, the defendant argues that the case

previously filed in the District Court for the Western District of Louisiana ("district court

action" or "quiet title action") must be compared to the original complaint the plaintiffs

filed in this court and that the plaintiffs' original complaint "asserted claims on nearly

identical operative facts."  Def.'s Mot. 2, Ex. 1 at 10-11; Compl. at ¶¶ 20-21.  The

government argues that because the district court action and CFC action are "based on

nearly identical operative facts," under the Supreme Court's interpretation of section 1500

in Tohono, this court does not possess jurisdiction over the plaintiffs' complaint.  The

government further argues that it is of no moment that adjudication of the district court

---

[2]The Court noted that any hardship its ruling would cause the Tohono O'Odham Nation
was "far from clear" because although the plaintiff's CFC case would have to be dismissed, an
Indian tribe in the plaintiff's position could always bring a suit in the CFC after resolution of the
district court case because the statute of limitations on Indian trust mismanagement claims would
only begin to run once the government provided an appropriate accounting.  Tohono, 131 S.Ct. at
1731.  Regardless, the Court held:

> Even were some hardship to be shown, considerations of policy divorced from the
> statute's text and purpose could not override its meaning.  Although Congress has
> permitted claims against the United States for monetary relief in the CFC, that relief
> is available by grace and not by right.  If indeed the statute leads to incomplete relief,
> and if plaintiffs like the Nation are dissatisfied, they are free to direct their complaints
> to Congress.

Id. (citations omitted).

action has been completed, and that the court must determine whether it had jurisdiction as of the time of the initial filing in the CFC, which occurred on April 3, 1998, while the quiet title case was pending before the district court.

The plaintiffs argue in response that there is in fact no substantial overlap in the operative facts between the district court complaint and the original CFC complaint. Specifically, the plaintiffs argue that while the two actions share some "background" facts, the "material" operative facts in the two complaints are different. The plaintiffs also note that certain of the plaintiffs, namely Jack E. Lawton, Sr. and William S. Lawton Company, L.L.C. were not parties in the district court litigation.[3] The plaintiffs argue that Tohono is distinguishable because in this case neither the district court nor the Court of Federal Claims could grant complete relief to the plaintiffs–in that connection, the plaintiffs argue that the district court never possessed jurisdiction over the plaintiffs'

---

[3]The plaintiffs also argue that the defendant's use of a motion under RCFC 12(b)(1) is improper, contending RCFC 12(i) requires that such a motion may only be made before trial. The court finds that the plaintiffs are mistaken. RCFC 12(i) states, "If a party so moves, any defense listed in RCFC 12(b)(1)-(7) . . . must be heard and decided before trial unless the court orders a deferral until trial." RCFC 12(i). The defendant, however, had not moved for dismissal before trial, so RCFC 12(i) is irrelevant on its face. Indeed, the plaintiffs recognize that a motion to dismiss for subject matter jurisdiction may not be waived and the court must dismiss an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." RCFC 12(h)(3) (emphasis added). Further, the Supreme Court has specifically addressed the plaintiffs' argument, holding, "The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh, 546 U.S. at 506; see also Litecubes, LLC v. N. Light Prods., Inc., 523 F.3d 1353, 1362 (Fed. Cir. 2008) ("[S]ubject-matter jurisdiction, because it involves the court's power to hear a case can never be forfeited or waived. . . . Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction. . . . even if the party had previously acknowledged the trial court's jurisdiction."); John R. Sand & Gravel, 552 U.S. 130.

takings claim alleged in its district court complaint.  The plaintiffs further argue that the court need not look only to the original CFC complaint, but may also look to the plaintiffs' "First Amended and Restated Complaint," filed January 6, 2003 after the district court action was complete.

> **2.**    **The district court complaint and the original CFC complaint share the same operative facts.**

The plaintiffs argue that for purposes of determining whether their two cases involve the same claim the "operative facts" are those relied upon by the district court and the Court of Federal Claims in the various decisions in those fora.  Thus, the plaintiffs argue, while the district court complaint and original CFC complaint contain a large amount of factual overlap, this overlapping factual "background" is not material to both cases.  Rather, the plaintiffs contend, the decisions of the district court and Fifth Circuit–in Central Pines I and Central Pines II–and the CFC–in Central Pines III, Central Pines IV, and Central Pines V–have shown that "the relevant material operative facts" in the two cases are unique to each.  Pls.' Resp. 1.  In particular, the plaintiffs argue that the district court and Fifth Circuit decisions focused on the 1940 Louisiana law regarding prescription of mineral servitudes and the factual determination of whether the government's acquisitions of land occurred before or after passage of that law, whereas the court in this CFC case has focused on just compensation for the government's taking of the plaintiffs' mineral interests based on events occurring after 1992.

The government argues in response that the "operative facts" are the allegations

the plaintiffs actually made in their complaints, not the facts included in the various

judicial opinions in the two cases.  The government notes that the operative facts–those

included in the complaints–alleged the same government conduct (e.g. the government's

leasing of the mineral interests) and were based on the same claim of ownership regarding

the mineral interests.  Accordingly, the government argues, the facts in the original CFC

complaint and the district court action are not only "substantially overlapping," they are

identical.

The court finds that the government has the prevailing argument.  An examination

of the district court complaint and original CFC complaint reveals that at the time the

CFC action was filed, the two claims arose from the same operative facts.  The district

court complaint, filed August 22, 1996, contains the following:

| | |
|---|---|
| ¶¶1-3 | The identities of the parties. |
| ¶4 | "This is an action for declaratory judgment . . . and to quiet title . . . ." |
| ¶5 | Statement regarding venue. |
| ¶¶6-7 | Description of the mineral interests involved and division of ownership amongst the plaintiffs. |
| ¶8 | The history of conveyances concerning the mineral interests, dating from the 1920s to 1980s. |
| ¶9 | Identification of the 1940 statute that allegedly made the mineral interests imprescribable. |
| ¶10 | Description of the three groups of mineral interests. |
| ¶¶11-12 | Description of the military and Forest Service use of the lands overlying the mineral interests. |
| ¶13 | Description of the 1943-1978 drilling and operations moratorium. |
| ¶14 | Allegation that since 1943 the lands overlying a substantial portion of the mineral interests have been continuously subject to heavy military use and are littered with unexploded |

ordnance.

¶15 Allegation that the government's activities have prevented the plaintiffs' mineral exploration and have prevented the minerals from prescribing.

¶16 Allegation that the government has recognized the plaintiffs as the mineral owners.

¶17 Allegation that, as early as 1992, the government had granted leases covering the subject mineral interests.

¶18 Allegation that the plaintiffs learned that the government claimed title to minerals in 1995.

¶¶19-20 Descriptions of communications between the plaintiffs and the government.

¶21 "As a result of the adverse claim of the United States of America described hereinabove, plaintiffs are entitled to a declaratory judgment quieting their title to the property . . . and for a judgment declaring any leases granted by the United States of America . . . to be null and void."

¶22 "In the alternative, and only in the event this Honorable Court determines that plaintiffs are not entitled to the relief prayed for in paragraph 21 hereinabove, plaintiffs allege that the action of the United States in confiscating the mineral interests of plaintiffs is an unconstitutional taking without compensation in direct violation of Amendment V of the United States Constitution and for which plaintiffs should be compensated."

Def.'s Mot. Ex. 1.  The original CFC complaint, filed April 3, 1998, contains the

following:

¶1 "The claims of the plaintiffs against the United States are based upon an unconstitutional taking of their mineral interests . . . ."

¶¶2-3 Description of the mineral interests involved and division of ownership amongst the plaintiffs.

¶4 The history of conveyances concerning the mineral interests, dating from the 1920s to 1980s.

¶5 Identification of the 1940 statute that allegedly made the mineral interests imprescribable.

¶6 Description of the three groups of mineral interests.

| ¶¶7-8 | Description of the military and Forest Service use of the lands overlying the mineral interests. |
|---|---|
| ¶9 | Description of the 1943-1978 drilling and operations moratorium. |
| ¶10 | Allegation that the government has recognized the plaintiffs as the mineral owners. |
| ¶11 | Allegation that since 1943 the lands overlying a substantial portion of the mineral interests have been continuously subject to heavy military use and are littered with unexploded ordnance. |
| ¶12 | Allegation that the government's activities have prevented the plaintiffs' mineral exploration and have prevented the minerals from prescribing. |
| ¶13 | Allegation that, as early as 1992, the government had granted leases covering the subject mineral interests. |
| ¶14 | Allegation that the plaintiffs learned that the government claimed title to minerals in 1995. |
| ¶¶15-16 | Descriptions of communications between the plaintiffs and the government. |
| ¶¶17-19 | Description of the district court action, including alternative request for just compensation for unconstitutional taking. |
| ¶20 | "If it is determined in the [district court action] that plaintiffs are not entitled to the relief therein requested, then the action of the United States in confiscating the mineral interests of the plaintiffs is an unconstitutional taking without compensation in direct violation of Amendment V of the United States Constitution for which they are entitled to just compensation." |
| ¶21 | "Because the present proceeding is brought in the alternative, in the interest of justice and judicial economy it should be stayed pending resolution of the [district court action]." |

Compl.

The Supreme Court in <u>Tohono</u> did not provide a definition of "operative facts" for

purposes of section 1500.[4]  However, courts have held that the facts alleged in two

---

[4]Black's Law Dictionary defines "operative fact" as "A fact that constitutes the transaction or event on which a claim or defense is based."  Black's Law Dictionary 670 (9th

complaints need not be identical for section 1500 to apply; rather, the two complaints

must stem from the same events.  See, e.g. Griffin v. United States, 590 F.3d 1291, 1294

(Fed. Cir. 2009) (finding that the same operative facts were present in two suits because

the plaintiff's "injury for both claims stem[med] from the same single event"); Trusted

Integration, Inc. v. United States, 93 Fed. Cl. 94, 100-103 (2010).  The Supreme Court

explained in Keene that a broad conception of the identity of facts is necessary to give

meaning to section 1500:

> The decision in British American Tobacco[ Co. v. United States, 89 Ct. Cl.
> 438 (1939),] strikes us, moreover, as a sensible reading of the statute, for it
> honors Congress's decision to limit Court of Federal Claims jurisdiction not
> only as to claims "for . . . which" the plaintiff has sued in another court, but as
> to those "in respect to which" he has sued elsewhere as well.  While the latter
> language does not set the limits of claim identity with any precision, it does
> make it clear that Congress did not intend the statute to be rendered useless by
> a narrow concept of identity providing a correspondingly liberal opportunity
> to maintain two suits arising from the same factual foundation.

Keene, 508 U.S. at 213.  Thus, the fact that certain facts may be needed to meet elements

of proof of a legal theory articulated in one complaint but not the other does not prevent a

finding that two complaints constitute the same claim for purposes of section 1500.

Trusted Integration, 93 Fed. Cl. at 102.  As the Federal Circuit has explained:

> [E]lements of proof are only relevant once a legal theory has been chosen.  As
> previously discussed, the term "claim" in section 1500 "has no reference to the
> legal theory upon which a claimant seeks to enforce his demand . . . ."  British
> American Tobacco Co., 89 Ct. Cl. at 440.  Since the legal theory is not
> relevant, neither are the elements of proof necessary to present a prima facie
> case under that theory.

---

ed.).

Johns-Manville Corp. v. United States, 855 F.2d 1556, 1564 (Fed. Cir. 1988).

Tested by these standards, it is clear that the plaintiffs' district court complaint and original complaint in this court constitute the same claim for purposes of section 1500. The facts alleged in the two complaints are nearly identical. Indeed, the only differences are the sections of the complaints relevant to the relief sought. The Supreme Court in Tohono has made clear that section 1500 by its terms does not distinguish between claims based on substantially the same operative facts merely because the relief sought in two actions is distinct. Tohono, 131 S.Ct. at 1731 ("Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." (emphasis added)). Thus, the fact that the main relief sought in the district court action was a declaration that the plaintiffs, rather than the government, possessed title to the mineral interests at issue whereas the CFC action sought just compensation for a Fifth Amendment taking of the same interests does not make the two claims distinct for purposes of section 1500.[5] Nor, of course, are the plaintiffs helped by the fact that they alleged a taking in the district

---

[5]The plaintiffs make much of the fact that the relief sought in the two courts was different, and that the plaintiffs could have received complete relief in neither venue. However, the court notes that the quiet title suit and the takings suit involved very similar considerations of mineral ownership. Had the plaintiffs not first filed their quiet title suit in district court, this court would have been required to settle the question of ownership before ruling on whether the plaintiffs' property had been taken without just compensation. See Yaist v. United States, 656 F.2d 616, 620 (Ct. Cl. 1981) (recognizing that this court has jurisdiction to determine ownership in a suit for just compensation) (citing Bourgeois v. United States, 545 F.2d 727, 729 n.1 (Ct. Cl. 1976)).

court action in the alternative.[6]

For these reasons, the court finds that the district court complaint and original CFC complaint are indeed "for or in respect to" the same claim because of the substantial overlap of operative facts.  See 28 U.S.C. § 1500.  Thus, section 1500 precluded this court from exercising jurisdiction over the plaintiffs' original CFC complaint because, at the time the complaint was filed, the same claim was pending in the District Court for the Western District of Louisiana.  In other words, if the plaintiffs' original complaint is the controlling pleading for purposes of determining whether jurisdiction is barred by section 1500, then the government must prevail.

The court will next address the plaintiffs' argument that, in the absence of jurisdiction over the original complaint, this court must look also to the plaintiffs' "First Amended and Restated Complaint" for determining whether this court gained jurisdiction over the plaintiffs' claims at a later time.

---

[6]The plaintiffs now contend that the district court never possessed jurisdiction over the taking claim, and thus the taking claim in this court was never duplicative of the district court action.  Indeed, the government concedes that the district court lacked jurisdiction over the taking claim due to the requirement that claims for more than $10,000 be brought in this court, rather than the district court.  See Def.'s Reply at 1 n.1 (citing 28 U.S.C. §§ 1346(a)(2), 1491(a)(1)).

Because the court finds that the plaintiffs' entire district court complaint, and not just the alternative taking claims, constitutes the same claim as was pled in the CFC complaint, the court need not reach the effect, if any, of the district court's alleged lack of jurisdiction over one portion of that complaint.

**C.   The Plaintiffs' "Amended and Restated Complaint" Was a De Facto Supplemental Complaint That Did Not Rescue the Plaintiffs' Claim from Section 1500's Jurisdictional Bar.**

Although the court has determined that this court did not possess jurisdiction over the plaintiffs' initial complaint because of the pendency of the quiet title action at the time that complaint was filed, the plaintiffs contend based on Rockwell International Corp. v. United States, 549 U.S. 457 (2007), that the plaintiffs' self-styled "First Amended and Restated Complaint," filed January 6, 2003, was in fact a supplemental complaint that vested this court with jurisdiction even if jurisdiction over the original complaint was lacking.  The plaintiffs argue that because the quiet title action was no longer pending at the time they filed this January 6, 2003 complaint in the CFC–the Supreme Court denied the plaintiffs' petition for certiorari on October 7, 2002–section 1500 does not apply to this later-filed de facto supplemental complaint, and therefore this court has jurisdiction over the plaintiffs' case.

The government argues that the 2003 complaint was an amended complaint rather than a supplemental complaint and, as such, relates back in time to the original 1998 complaint.  Thus, the government contends, the amendment cannot cure the section 1500 jurisdictional defect present at the time the original CFC complaint was filed. Alternatively, the government contends based on Black v. Secretary of Health & Human Services, 93 F.3d 781 (Fed. Cir. 1996), that even if the 2003 complaint is considered to be a supplemental complaint, such a supplemental complaint may not be used to vest this court with jurisdiction after the resolution of the district court case because section 1500

contains a strict prohibition on this court's jurisdiction when a claim in district court is pending at the time a CFC case arising from the same operative facts is filed. Although the court agrees with the plaintiffs that the 2003 complaint is properly considered as a supplemental complaint rather than an amended complaint, the court finds, as the government argues, that the jurisdictional bar imposed by section 1500 may not be cured by such a supplemental pleading.

As an initial matter, the court finds that although the plaintiffs styled the January 6, 2003 as a "First Amended and Restated Complaint," because this complaint contains additional allegations concerning events that occurred after the plaintiffs filed their initial complaint–namely the resolution of the quiet title action–the 2003 complaint is a de facto supplemental complaint. See RCFC 15(d) (a party may "serve a supplemental pleading setting forth the transactions or occurrences or events which have happened since the date of the pleadings sought to be supplemented"); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1337 (Fed. Cir. 2008) ("Because the Amended Complaint included allegations regarding events that happened after the first complaint, technically it is a supplemental complaint, not an 'amended complaint.'"); Walton v. United States, 80 Fed. Cl. 251, 265 (2008).

While RCFC 15(d) by its terms allows for supplementation even where "the original pleading is defective in stating a claim," RCFC 15(d), the Federal Circuit has held that a supplemental complaint cannot cure certain jurisdictional defects. In Black, the Circuit considered whether a claimant seeking benefits under the National Childhood

Vaccine Injury Act could file a supplemental pleading that would cure the deficiency in

its original petition caused by the failure to incur $1000 in out-of-pocket expenses before

the original filing.  The Circuit held that the supplemental pleading could cure this

deficiency in the original petition based on the Circuit's reading of the relevant statute,

which the Circuit found allowed the petitioner to meet the $1000 requirement after the

filing of the original complaint and to then supplement the complaint at any point within

the applicable statute of limitations.  Black, 93 F.3d at 791.  In doing so, the Circuit

explained that a supplemental pleading may sometimes, but not in every statutory context,

vest a court with jurisdiction.  The Circuit held that those statutes that bar jurisdiction in

certain situations cannot be "rescue[d]" by filing a supplemental complaint:

> Determining whether a supplemental pleading can be used to rescue an
> insufficient petition or complaint in a particular case depends on a careful
> reading of the substantive provision at issue.  If the statute in question
> contains, for example, an express prohibition against filing a complaint before
> the expiration of a statutory waiting period, it would defeat the purpose of the
> statutory prohibition to permit a plaintiff to ignore the waiting period, file his
> complaint during the prohibited period, and then seek to cure the defect by
> filing a supplemental pleading alleging that the waiting period expired during
> the pendency of the action.  The Supreme Court's decisions in McNeil v.
> United States, 508 U.S. 106 (1993), and Hallstrom v. Tillamook County, 493
> U.S. 20 (1989), illustrate that point.  The statutes at issue in those cases
> contained express prohibitions against filing suit prior to the expiration of a
> waiting period or before exhausting administrative remedies.[7]  The Supreme

---

[7]McNeil involved the requirement that before bringing a claim under the Federal Tort
Claims Act a claimant must receive a final denial of his or her claim by the agency to which the
claim was presented.  See 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim
[against the United States for tort] unless the claimant shall have first presented the claim to the
appropriate Federal agency and his claim shall have been finally denied by the agency . . .
."(emphasis added)).  Hallstrom held that the sixty-day notice requirement was a mandatory
condition precedent to bringing a citizen suit under the Resource Conservation and Recovery

> Court therefore required the complaints filed during the prohibited period to be dismissed and did not permit the actions to go forward, even though the waiting period or administrative exhaustion was completed while the complaint was pending.  <u>As the Supreme Court viewed the statutes at issue in those cases, it would be contrary to Congress's intent for a district court to employ a procedural device that would permit a plaintiff to file his complaint within the prohibited period, yet still maintain the action.</u>

<u>Id.</u> at 790-91 (emphasis added) (citing <u>Keene</u>, 508 U.S. at 208-09 (construing 28 U.S.C. § 1500 as barring the Court of Federal Claims from entertaining the claim of a plaintiff who, at the time of filing the claim, had an action pending in any other court for or in respect to the same claim); <u>Weddel v. Sec'y of Dep't of Health & Human Servs.</u>, 23 F.3d 388, 392-93 (Fed. Cir. 1994) (construing 42 U.S.C. § 300aa-11(a)(5)(A), which bars a person with a pending civil action for damages for a vaccine-related injury from filing a petition for compensation, as requiring dismissal of a petition filed before the civil action was dismissed)).  In <u>Black</u>, the Circuit distinguished these "express prohibition" statutes from the statute at issue in <u>Mathews v. Diaz</u>, 427 U.S. 67 (1976) (holding that where a statute that barred a claimant from obtaining judicial review–but not from filing a claim–before seeking administrative relief, the claimant could supplement the complaint after satisfying the exhaustion requirement), finding that the $1000 requirement was more akin to <u>Mathews</u> than to the "express prohibition" statutes in <u>McNeil</u> and <u>Hallstrom</u>. Thus, although in dicta, the Circuit in <u>Black</u> indicated through its citation of <u>Keene</u> that

---

Act.  <u>See</u> 42 U.S.C. § 6972(b) ("<u>No action may be commenced</u> . . . prior to sixty days after the plaintiff has given notice of the violation [] to the [EPA] Administrator; [] to the State in which the alleged violation occurs; and [] to any alleged violator . . . ." (emphasis added)).

section 1500 is the type of statute containing an "express prohibition" on jurisdiction such that a court's jurisdiction may not be "rescue[d]" by a supplemental pleading.  Id.

More recent Supreme Court and Federal Circuit cases do not appear to have altered this distinction between "express prohibition" statutes and more liberal statutes that allow supplementation to cure jurisdictional defects in the original complaint.  For instance, in Prasco, a patent case in which the defendants moved to dismiss the initial complaint on the grounds that a lack of case or controversy precluded subject matter jurisdiction and then the plaintiff filed a self-styled "Amended Complaint" that alleged new post-filing facts supporting the existence of a controversy, the Federal Circuit found that jurisdiction over the latter complaint was proper:

> Rule 15(d) expressly allows for supplemental complaints to "cure" defects in the initial complaint. . . . The Supreme Court has confirmed that supplemental pleadings can be used to cure subject matter jurisdiction deficiencies.  See Mathews v. Diaz, 426 U.S. 67, 75 (1976) (explaining that there was "little difficulty" in a party's failure to file an application that was a 'nonwaivable condition of jurisdiction" until after he was joined in the action because "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue"); see also 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1505, at 191 (explaining that, prior to the 1963 amendment to Rule 15(d), some courts had not allowed curing of defects through supplemental complaints, but that the addition of the second sentence to 15(d) in 1963 removed "any uncertainty on the point").
> Thus, while "[l]ater events may not create jurisdiction where none existed at the time of filing," the proper focus in determining jurisdiction are "the facts existing at the time the complaint under consideration was filed." GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 483 (Fed. Cir. 1996) (emphasis added) (quoting Arrowhead Indus. Water, Inc. v. Ecolochem Inc., 846 F.2d 731, 734 n.2 (Fed. Cir. 1988)); see also Rockwell Int'l Corp. v. United States, 549 U.S. 457 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the

-22-

amended complaint to determine jurisdiction."); Connectu LLC v. Zuckerberg, 522 F.3d 82 (1st Cir. 2008).   As the district court accepted [plaintiff's] Amended Complaint, it is the Amended Complaint that is currently under consideration, and it is the facts alleged in this complaint that form the basis for our review.

Prasco, 537 F.3d at 1337.[8]   The Circuit in Prasco did not cite Black nor note the distinction drawn in Black between statutes containing express prohibitions on jurisdiction and situations in which jurisdictional problems may be cured by a supplemental complaint.   However, Prasco specifically relied upon Mathews, which the Circuit in Black distinguished as falling into the latter category of cases where jurisdiction can be cured, whereas cases involving jurisdictional bars under section 1500 fall into the former category, in which jurisdiction cannot be cured.[9]   Therefore, binding Federal Circuit case law provides that a supplemental complaint cannot rescue a case that was barred by section 1500.[10]

_____

[8]That Prasco and many other cases cited in this opinion involved Rule 15(d) of the Federal Rules of Civil Procedure rather than RCFC 15(d) is of no moment, as Rule 15(d) of each set of rules is identical.

[9]It is for this reason that the plaintiffs' extensive reliance on Connectu (cited with approval by the Federal Circuit in Prasco, 537 F.3d at 1337) is misplaced.  In Connectu, the First Circuit held that where a plaintiff by right and without objection filed an amended complaint to change the basis for subject matter jurisdiction, the later complaint was effective even if the court did not possess jurisdiction over the initial complaint.  See Connectu, 522 F.3d at 95-96. Connectu did not involve the problem of a statutory bar to jurisdiction over the initial complaint as is at issue here, nor did it involve other particular issues raised when bringing a case against the federal government.  See, e.g., Lane v. Pena, 518 U.S. 187, 192 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." (citing United States v. Williams, 514 U.S. 527, 531 (1995); Library of Cong. v. Shaw, 478 U.S. 310, 318 (1986); Lehman v. Nakshian, 453 U.S. 156, 161 (1981))).

[10]Although for the reasons set forth above the court finds no conflict between Black and Prasco, to the extent there is "direct, irreconcilable conflict between two panel decisions, the

Finally, the court finds that plaintiffs' reliance on the Supreme Court's holding in Rockwell, which is cited in Prasco, does not change its analysis.  In Rockwell the Supreme Court held that a federal court should look to the specific complaint before it in deciding jurisdiction.  Rockwell concerned the question of whether an amended complaint would have the effect of divesting a federal court of jurisdiction where the amended pleading omitted the allegations in the original complaint that had formed the basis of the court's qui tam jurisdiction.[11]  In holding that the plaintiff needed to establish his status as an "original source" of information at all stages in the case, the Court explained:

> The rule that subject-matter jurisdiction "depends on the state of things at the time of the action brought," Mullan v. Torrance, [22 U.S. 537] (1824), does not suggest a different interpretation.  The state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction.  So also will the withdrawal of those allegations, unless they are replaced by others that establish jurisdiction.  Thus, when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.

---

earlier decision is controlling precedent."  Briseno v. United States, 83 Fed. Cl. 630, 633 n.5 (2008) (citing Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc.  Where there is direct conflict, the precedential decision is the first." (citation omitted))).  Thus, to the extent Prasco and Black are in conflict with one another, this court is bound by Black.

[11]For a court to possess jurisdiction over a qui tam action, the plaintiff ("relator") must be the "original source" of the information forming the basis of the action.  The original complaint in Rockwell included only information for which the relator in that case was the original source.  The amended complaint, however, made different allegations and removed the allegations for which the relator was the original source.  See Rockwell, 549 U.S. at 463-65.

Rockwell, 549 U.S. at 473-74 (citations omitted).  Although the Court stated that "courts look to the amended complaint to determine jurisdiction," the issue of whether an amended or supplemental complaint can cure or rescue a court's jurisdiction when jurisdiction was lacking in the first instance was not before the Court in that case.  Rather, the question before the Supreme Court was whether a court can lose jurisdiction when the basis for jurisdiction present in the original complaint has disappeared in an amended complaint.  Thus, Rockwell can be read as holding that a court must possess jurisdiction over a case at all times.  Rockwell therefore does not put this court's reliance on Black in doubt.

For all of the foregoing reasons, the court agrees with the government that the plaintiffs' de facto supplemental complaint did not confer jurisdiction upon this court by curing or rescuing the case from section 1500's jurisdictional bar.[12]

### D.    This Outcome Is Not Altered by the Hardship Caused to the Plaintiffs in This Case.

The court is of course mindful of the hardship caused by the application of section

---

[12]The plaintiffs' argument that section 1500 is inapplicable because certain of the plaintiffs, namely Jack E. Lawton, Sr. and William S. Lawton Company, L.L.C. were not parties in the district court litigation is without merit.  Upon examination, Jack E. Lawton, Sr. and William S. Lawton Company, L.L.C. were indeed not named in the original complaint filed in this court; the court granted the unopposed motion to add the two plaintiffs as parties on January 30, 2006 after plaintiffs filed the amended complaint in 2003.  Although the takings claims of Jack E. Lawton, Sr. and William S. Lawton Company, L.L.C. would not have been barred by section 1500 in 1998, these two plaintiffs' status as mineral royalty interest owners would not have permitted their claims to prevail in this court because oil and gas was never developed and the royalty interest never ripened into a money-mandating claim.  As such, these plaintiffs cannot salvage this court's jurisdiction over this litigation.

1500 in this case.  Not only did the plaintiffs follow the traditional practice of filing a claim in this court in order to fall within the statute of limitations for their taking claim, the plaintiffs' supplemental complaint–filed after the resolution of the quiet title action that had raised section 1500's jurisdictional bar–also fell within the relevant statute of limitations.  There is no doubt that had the plaintiffs understood the impact of section 1500 as has since been expressed in Tohono, the plaintiffs would have simply dismissed their original CFC complaint and filed a new case after the completion of the quiet title action.  However, as the government correctly notes, the jurisdictional bar created by section 1500 is not affected by the lengthy litigation history in this case and the departure from Federal Circuit precedent set forth in Tohono.  Indeed, the Supreme Court acknowledged in Tohono that its decision could well lead to such results:

> Even were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning.  Although Congress has permitted claims against the United States for monetary relief in the CFC, that relief is available by grace and not by right.  If indeed the statute leads to incomplete relief, and if plaintiffs . . . are dissatisfied, they are free to direct their complaints to Congress.

Tohono, 131 S.Ct. at 1731 (citations omitted); see also Keene, 508 U.S. at 217-18 ("[T]he 'proper theater' for such arguments . . . 'is the halls of Congress, for that branch of the government has limited the jurisdiction of the Court of Claims.'  We enjoy no 'liberty to add an exception . . . to remove apparent hardship,' and therefore enforce the statute. (footnote and citations omitted)).  The Supreme Court has noted that the statute was initially enacted to prevent the filing of duplicative suits by "cotton claimants" seeking

compensation for property lost during the civil war and that there is a good argument that the statute never performed its intended function.  <u>Keene</u>, 508 U.S. at 206, 217 ("The trial judge in this case was not the first to call this statute "anachronistic.").

The plaintiffs have been in litigation with the government regarding the plaintiffs' mineral interests since 1998.  After numerous rulings on dispositive motions and a trial, the court found the government liable for just compensation amounting to $1,667,042.86 plus interest, a finding that was the result of much time and effort for all involved.  <u>See Central Pines V</u>.  In this case, the basis for the plaintiffs' just compensation claims accrued no more recently than 2003.  Thus, the plaintiffs cannot now file a new taking claim, as this court's jurisdiction over that claim would be barred by the strict six-year statute of limitations.  <u>See</u> 28 U.S.C. § 2501; <u>John R. Sand & Gravel</u>, 552 U.S. 130.  This case therefore presents exactly the type of incomplete relief and hardship the Supreme Court noted could result from application of section 1500 when it recognized that the statute of limitations may have run in some cases before the plaintiffs could file a CFC case.  However, as the Supreme Court stated in <u>Tohono</u>, "considerations of policy divorced from the statute's text and purpose could not override its meaning."  <u>Tohono</u>, 131 S.Ct. at 1731.  For this reason, while the court recognizes the significant hardship imposed by this ruling, the court must dismiss the plaintiffs' complaint.[13]

---

[13]As noted above, had the plaintiffs been aware that the court lacked jurisdiction over their CFC claims, they could have filed a new case once the quiet title action was no longer pending.  The plaintiffs' failure to do so appears to have been reasonable based on the law of the Federal Circuit prior to <u>Tohono</u>, which was such that the plaintiffs' CFC complaint did not

III.   **CONCLUSION**

For the above-stated reasons, the defendant's motion to dismiss for lack of subject-

matter jurisdiction pursuant to 28 U.S.C. § 1500 is **GRANTED**.  The clerk is directed to

enter judgment accordingly.  Each party is to bear its own costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

appear to be barred by section 1500.  It is only now, thirteen years after the initiation of this
action, that the Supreme Court has clarified the restriction imposed by section 1500, making
clear that the plaintiffs were precluded from seeking relief in this court at the time they filed their
original complaint.

Given the extent of hardship, this case may be appropriate for a congressional reference,
wherein a bill is referred to the chief judge of this court by either house of Congress for review
by a three-judge panel.  See 28 U.S.C. §§ 1492, 2509(a); Moden v. United States, 60 Fed. Cl.
275, 290-91 (2004).